STATE OF MINNESOTA *ex rel.* B. H. CHESLEY *vs.* JOHN D. WILCOX.

### September 22, 1877.

**Writ of Prohibition—When will issue to Restrain Excess of Jurisdiction by Subordinate Tribunals.**—The writ of prohibition will issue to restrain excess of jurisdiction by subordinate tribunals, in proceedings other than ordinary actions, even though there may be a remedy by appeal; and to restrain such proceedings the writ will issue, although the party applying for it has not raised the question of jurisdiction before the subordinate tribunal; certainly where it may be presumed from its prior action that such tribunal has passed on the question of jurisdiction.

**Probate Court—Jurisdiction—County Attached for Judicial Purposes.**—Where a county "established," but not organized, nor authorized to have a probate court, is attached for judicial purposes to an "organized" county, the probate court of the latter has jurisdiction over the former.

**Same—Same—Guardianship of Insane Persons.**—Jurisdiction over the general subject of guardianship, as well of insane persons as of minors or others, and including appointment of guardians, is vested by the constitution in the probate courts. The acts of the legislature authorizing judges of probate to examine and commit insane persons to the hospital for the insane, merely regulate the exercise of the jurisdiction, and are valid.

**Same—When Order Cannot be Enforced by Proceedings for Contempt.**—The judge of probate of the county of Pine, to which the county of Kanabec is attached for judicial purposes, entertained proceedings to exam-

ine and commit to the hospital an insane person alleged to be a resident of Kanabec county, and audited the fees incurred, and entered judgment therefor, and by written order, under the seal of the court, directed them to be paid by the county treasurer of Kanabec county out of the county treasury. *Held*, that such order was not a judicial order, and payment of it by the treasurer cannot be enforced by the judge of probate, by proceedings for contempt.

This was a writ of prohibition, commanding the respondent, judge of probate for Pine county, to show cause, upon a day named, why he should not be absolutely restrained from enforcing the payment of a certain order upon the relator, treasurer of Kanabec county, by certain proceedings for contempt. The respondent, in his return thereto, prayed that the said writ might be dismissed, and that a writ of consultation might issue.

*Palmer & Bell*, for relator.

*William Barrett*, for respondent.

This is a common law writ, governed by common law principles, and is neither changed, limited or extended by the statute confirming its use in this state. *Home Ins. Co.* v. *Flint*, 13 Minn. 246. It is a well-established principle, however, of the common law, that, before the writ could issue in such a case as this, the want of jurisdiction should have been pleaded and refused in the court below. *Edmundson* v. *Walker*, Carth. 166; *Cox* v. *St. Albans*, 1 Mod. 81; *Bouton* v. *Hursler*, 1 Barn. 71; *Ex parte Meechen*, 12 Ark. 70; *Ex parte City of Little Rock*, 26 Ark. 52; High on Ex. Leg. Rem. 558, 559.

This writ is intended only to supply a remedy in extraordinary cases, and it will therefore not be issued until it appears that the aggrieved party has been denied relief in the inferior tribunal, (High on Ex. Leg. Rem. 551; *State* v. *Judge*, 4 Rob. La. 48; *State* v. *Judge*, 10 Rob. La. 169,) and that no complete remedy can be had in the ordinary course of judicial proceedings, (*Ex parte Quackenbush*, 2 Hill, 369; *State* v. *Judge*, 11 Wis. 50; *State* v. *Judge*, 11 La. An. 696; *State* v. *Judge*, 21 La. An. 125; *State* v. *Braun*, 31 Wis. 600; *Cooper* v. *Stocker*, 9 Rich. 292; *People* v. *Seward*,

7 Wend. 518; *Sasseen* v. *Hammond,* 18 B. Mon. 672,) by appeal, (*State* v. *Judge,* 21 La. An. 123; *People* v. *Court,* 11 Mich. 393; *McDonald* y. *Elfe,* 1 N. & McC. 501; *State* v. *Wakely,* 2 N. & McC. 410; *State* v. *Nathan,* 4 Rich. 513; *State* v. *Judge,* 11 La. An. 696; *Ex parte Peterson,* 33 Ala. 74; *People* v. *Marine Court,* 36 Barb. 341; *Symes* v. *Symes,* Burr. 813,) or writ of error.

It is clear that the court in this instance had jurisdiction of insane persons in Pine county, (art. 6, § 7 of the Constitution; Gen. St. *c.* 49, § 2; § 3, sub. 7, 9; Gen. Laws 1866, *c.* 6, §§ 16, 17, 18; Gen. Laws 1867, *c.* 12; Gen. Laws 1868, *c.* 17; Gen. Laws 1872, *c.* 16,) not merely where such persons actually had been, but also where they were liable to be placed under guardianship. It is also clear that this court had such jurisdiction in Kanabec county, (Gen. St. *c.* 64, § 33; Gen. Laws 1871, *c.* 84; Gen Laws, 1872 *c.* 16; Gen. Laws 1873, *c.* 81; *Case of Francis Lee,* 1 Minn. 50, (70;) *State* v. *Gut,* 13 Minn. 341; *Beebe* v. *Fridley,* 16 Minn. 518,) which had been attached to Pine county for judicial purposes. Therefore a resort to this writ would not be justified, even if the court erred in the exercise of its jurisdiction. High on Ex. Leg. Rem. 554: *Ex parte Peterson,* 33 Ala. 74; *Ex parte Greene,* 29 Ala. 52. If, however, the judge of probate had jurisdiction over probate matters in Kanabec county, he had jurisdiction also over the person of Anderson, and over the treasurer of Kanabec county, and it therefore follows that he was authorized to allow and tax the costs of the proceedings against Anderson, to enter up the judgment against Kanabec county, and draw the order upon the county treasurer for its payment. The refusal of the treasurer to pay the order was, therefore, a contempt of the court, and rendered him liable to punishment. Gen. St. *c.* 49, § 7.

GILFILLAN, C. J. Kanabec county is, and has been since 1858, an "established" county, and since 1871 has been attached for judicial purposes to Pine county, which is an "organized county." One Anderson, a single man and unnat-

uralized Swede, who had been in this state but three months, ten weeks of which he lived with an uncle in Kanabec county, and afterwards worked as a common laborer ten days in Pine county, became insane, and proceedings under the statute were instituted before the respondent, judge of probate of Pine county, which resulted in Anderson's commitment to the hospital for insane. The judge of probate thereupon entered a judgment or order for the costs, fees and disbursements in the matter, to be paid out of the county treasury, by the county treasurer of Kanabec county, upon the written order of the judge of probate, under the seal of his court, and afterwards issued a written order, under the seal of his court, directing the treasurer of Kanabec county to pay such fees and disbursements. The matter of paying them appears to have been laid before the county commissioners of that county, and they directed the treasurer not to pay them, and he refused to pay them. The judge of probate thereupon issued an order requiring the relator, the county treasurer of Kanabec county, to show cause why he should not be punished as for a contempt in disobeying said order.

The proceeding here is an application for an absolute writ of prohibition restraining the respondent from proceeding further in the matter. It is based necessarily on the assumption that the judge of probate, in the attempt to enforce payment of the fees by the relator, is proceeding or about to proceed beyond his jurisdiction.

A preliminary objection is made by the respondent that the writ of prohibition will not lie because the question of jurisdiction in the proceedings contemplated by the judge of probate must first be raised before and passed upon by him, and because the writ will not lie when there is an adequate remedy by appeal or writ of error.

If it be a correct proposition that the want of jurisdiction must be pleaded, and the plea refused, in the subordinate tribunals before the writ will issue—and we doubt its correctness, except where it occurs in an ordinary action—it can have

no application to this case, for the judge of probate must be presumed to have considered and passed upon the question of jurisdiction in making the order upon which his subsequent proceeding is based.

The rule laid down by some text writers and decided cases, that the writ of prohibition is not a proper remedy when there is an adequate remedy by appeal or writ of error, is not one of universal application. It is undoubtedly correct as applied to a case where, in the course of an ordinary action, the court attempts to decide upon matters not within its jurisdiction, for all errors of that description are best corrected by the usual remedy of an appeal, writ of error, or *certiorari*. To extend the rule further than that would almost entirely abolish the writ. There are very few proceedings of a judicial character in which a party aggrieved by a usurpation of jurisdiction may not, either by some mode of review and correction, or by an action of trespass or otherwise, have an adequate remedy for the wrong. But we do not find any decision that in extraordinary proceedings the existence of such a remedy shall be ground for a refusal of the writ. The power of the court to issue the writ in such cases was distinctly affirmed in *Leman* v. *Goulty*, 3 Term, 3; and *Appo* v. *The People*, 20 N. Y. 531. The case before us is a proper one for the writ.

Two questions of jurisdiction are raised—one going to the authority of the judge of probate to proceed at all in the matter of Anderson as an insane person, the other to his authority to enforce payment of these fees by proceedings for contempt.

The first of these questions is based upon the proposition that the arrest, examination and commitment to the hospital for insane of insane persons does not come within the jurisdiction conferred on probate courts by the constitution. Section 7, art. 6, provides; "A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction except as prescribed by this constitution." This clause came under consideration

in *Jacobs* v. *Fouse*, 23 Minn. 51, and it was held to invest the probate court with general jurisdiction of the subject of guardianship, and to give power as well to put persons under guardianship as to control that relation after it is created. The putting under guardianship of all persons who are proper subjects for it—insane persons, incorrigible drunkards, idiots, spendthrifts, as well as minors—comes within this jurisdiction. The care and custody of insane persons was, at the date of the constitution, recognized as within the general matter of guardianship, (Rev. St. of 1851, *c.* 69, art. 3, § 3, sub. 7, and *c.* 67, § 12,) and this was contained in the Revision of 1866, (Gen. St. *c.* 49, § 3, sub. 7, and *c.* 59, §8.) The jurisdiction of probate courts in the matter of the guardianship of insane persons is as indisputable as its jurisdiction in the matter of the guardianship of minors or any other class.

The manner in which jurisdiction conferred by the constitution on any court or officer shall be exercised when not prescribed by the constitution itself, or the power to regulate it vested elsewhere, may be regulated by the legislature. For instance, under the clause of the constitution we have quoted, the legislature has authority to provide what persons may be appointed guardians, and to provide how, by warrant or otherwise, a person alleged to be insane may be brought before the probate court; how the question of insanity shall be examined; how the guardian shall be appointed and the insane person committed to his charge, and prescribe the duties and responsibilities, rights and powers of guardians. It may provide that there shall be a common guardian, to whose care and custody all persons found to be insane shall be committed, and regulate the proceedings for such commitment, leaving the probate court to determine whether, in each particular case, the particular person shall be put under such guardianship.

The acts under which the respondent proceeded assume to do no more than this. In effect, the superintendent of the hospital for insane is designated by those acts as a common guardian for insane persons. The insane are not placed in his

charge as for crimes committed, for punishment, but for the care, custody, attendance, support, and treatment which their unfortunate and helpless condition requires. They are committed to his custody precisely as an insane person is committed to the custody of a private guardian appointed by the court. Upon this theory the legislature passed the various acts authorizing the judge of probate to commit insane persons to the hospital for insane (the acts of March 2, 1866; of March 5, 1867; of March 6, 1868, and of March 4, 1872;) all of which acts assume the power of the legislature to provide for such commitment and regulate the proceedings therein. In passing those acts the legislature did not vest any new jurisdiction, but merely regulated the exercise of one already vested by the constitution.

We have no doubt that where a county "established," but not "organized," and which is not authorized by law to have a probate court, is attached to an organized county for judicial purposes, the probate court of the latter county may exercise its jurisdiction over the former. The constitution provides for probate courts only in organized counties. The legislature may give "established" counties such officers as it pleases, or provide that the duties may be performed by the officers of the county to which they are attached, for the purpose of extending the jurisdiction of such officers over them.

There is some question whether, under the acts we have referred to, the judge of probate may not only audit the fees and expenses of the proceedings before him, but render a judgment conclusive of the liability of a particular county to pay them; and, for that purpose, may try and determine any question, such as that of domicil, upon which the question of liability might depend, and do this without notice to the county claimed to be liable for such expenses.

Conceding, but without deciding, that he has such authority, the question arises, can he enforce such judgment by proceedings for contempt? The statute does not expressly give him power to do so. Such, a mode of enforcing a mere

money judgment cannot exist unless the statute expressly or by implication prescribes it. The section under which the power is claimed, (section 18, as amended by chapter 16, Laws of 1872,) after prescribing what the fees shall be, provides: "Such amounts to be audited by the judge of probate, or court commissioner, and judgment entered of record therefor, to be paid out of the county treasury by the county treasurer upon the written order of the judge of probate or court commissioner, under seal of the court; and upon payment thereof said judgment shall be satisfied of record by the judge of probate or court commissioner." If the order here mentioned were a judicial order, determining the duty of the county treasurer and commanding its performance, there would be some ground to claim that obedience to it should be enforced by proceedings for contempt. But it is not judicial; it is not made after a hearing in which the county treasurer or even the county is a party, and it is not required to be entered of record. It stands, upon the concession we have made, on no different footing, so far as relates to the duty of the county treasurer upon its presentment to him, than the ordinary county orders drawn by the auditor on the treasurer, and payment of it must be enforced as against the treasurer in the same way. In attempting to enforce payment by proceedings for contempt, the respondent is acting beyond his jurisdiction, and an absolute writ of prohibition must issue as prayed for.