FRANK FOREMAN v. BOARD OF COUNTY COMMISSIONERS OF HEN-
NEPIN COUNTY.[1]

May 11, 1896.

Nos. 9944—(232).

**Constitution—Laws 1895, c. 156—Treatment of Inebriates.**

Laws 1895, c. 156, entitled "An act to provide for the treatment of inebriates by counties, * * *" *held* invalid, for the reason that it assigns to the probate judge powers and duties beyond the jurisdiction authorized by the constitution.

**Same—Probate Court—Persons under Guardianship.**

The proceedings authorized by the act do not amount to a commitment of an inebriate to the guardianship of any one, and hence do not come within the general jurisdiction of "persons under guardianship" conferred by the constitution on the probate court.

Action in the district court for Hennepin county by Frank Foreman, doing business under the name of the Keeley Institute. The complaint alleged that one Benjamin Gilbert, an habitual drunk-

[1] Reported in 67 N. W. 207.

ard and resident of that county, made application to the probate judge thereof to secure the benefits provided by Laws 1895, c. 156; that such proceedings were had that Gilbert was committed to plaintiff, which was a Keeley Institute for the cure of inebriates, and remained there until he was cured; that defendant refused to enter into any contract with plaintiff, fixing the compensation of plaintiff before such treatment was given, or to audit plaintiff's claim, or to allow or pay any portion thereof. From an order of the court, Smith, J., overruling a demurrer to the complaint, defendant appealed. Reversed.

*A. H. Nunn*, Special Attorney for Hennepin county, *F. M. Nye*, County Attorney, Hennepin County, and *H. W. Childs*, Attorney General, for appellant.

*Matthew Gallagher* and *Freeman P. Lane*, for respondent.

MITCHELL, J. The questions raised by this appeal go to the validity and construction of Laws 1895, c. 156, entitled "An act to provide for the treatment of inebriates by counties, and prescribing rules governing the same." The contention of the defendant is that the act assumes to confer upon the probate judge judicial power beyond that authorized by section 7, art. 6, of the constitution of the state. The contentions of the plaintiff are (1) that the powers and duties conferred and imposed by the act are merely ministerial; but, (2) if they are judicial, they are authorized by the provision of the constitution giving the probate court jurisdiction of "persons under guardianship."

If we were to hold that these powers and duties are merely ministerial in their nature, it would not aid the plaintiff; for it is a fundamental principle of American constitutional law that neither the legislative nor executive branches of the government can constitutionally assign to the judiciary any duties but such as are properly judicial, and to be performed in a judicial manner. In the Matter of the Application of the Senate, 10 Minn. 56 (78); Rice v. Austin, 19 Minn. 74 (103); State v. Young, 29 Minn. 474, 9 N. W. 737. See, also, Ex parte Griffiths, 118 Ind. 83, 20 N. E. 513, and cases cited. This is a phase of the case that does not seem to have been suggested or considered in State v. Ueland, 30 Minn. 29, 14 N. W. 58, relied on by plaintiff's counsel. The precise line of cleavage between judicial and ministerial functions never has been, and never can be,

definitely located. There are many duties which may be either the one or the other, depending upon the officer or body performing them, and the effect to be given to the action or determination of such officer or body. When duties of this ambiguous or equivocal nature are imposed upon a judicial officer or tribunal, to whom none but judicial duties can be constitutionally assigned, the doubt should be solved in favor of the validity of the statute, and the duties held to be judicial, and the presumption indulged in that the legislature intended them to be performed in a judicial manner.

By the act in question, the legislature undoubtedly intended to make provision, in the nature of a bounty, for its inebriate poor. It could have granted this bounty unconditionally, but it saw fit to grant it on certain conditions. It could have assigned to any ministerial officer or body, or even to private persons, the duty of investigating and ascertaining the facts upon the existence of which the bounty is conditioned. Had the legislature adopted this course, the act would not have been subject to the objection that it delegated judicial powers and duties to nonjudicial tribunals. But having imposed the duty upon a judicial officer, requiring him to hear and determine upon evidence, and clothing him with power to compel the attendance of witnesses, it was the apparent intention of the legislature that the probate judge should act judicially, and that his decision should have the effect of a judicial determination of the matters submitted to him, to wit, whether the party was a resident of the state, an habitual drunkard, and without means to pay for treatment. It seems to us that his action was intended to be judicial as much as was the action of the district court, under the statute considered in Dike v. State, 38 Minn. 366, 38 N. W. 95, in determining the facts upon which the bounty of the state was conditioned in that case.

Assuming, then, that the powers and duties conferred and imposed by the act upon the probate judge are judicial, the question remains, are they beyond the jurisdiction authorized by the constitution? The constitution undoubtedly confers upon the probate court jurisdiction of the general subject of guardianship. Jacobs v. Fouse, 23 Minn. 51; State v. Wilcox, 24 Minn. 143. While it may be true that, in England, infancy and insanity were the only grounds for guardianship, yet, in this country, habitual drunken-

ness is now made by statute a ground for the appointment of a guardian of the person or of the property, or of both. It was so in the territory of Minnesota at the time of the adoption of the constitution. Rev. St. 1851, c. 67, § 12, and chapter 69, art. 3, §§ 3, 17, 18. Hence, if the act under consideration provided for committing habitual drunkards to the guardianship of the officers of an institute for the treatment of drunkenness, as the statutes considered in State v. Wilcox, supra, provided for committing insane persons to the hospitals for the insane, the jurisdiction of the probate judge could be sustained, and on the same grounds. But an examination of the act satisfies us that the proceedings provided for do not contain the first element of a legal guardianship of the person. The institute in which the drunkard is to be treated is designated, not by the probate judge, but by three citizens appointed by the judge. After the designation of the institute, and the so-called "commitment," it is still entirely optional with the inebriate whether he will go there for treatment. Neither the probate judge nor the officers of the designated institute have any power to compel him to do so. And, if he sees fit to go there voluntarily, no one has any power to compel him to stay there, or to submit to treatment for a single day. The only semblance of authority or control over him by any one is the authority given in the fifth section of the act, to the officers of the institute, to enforce such reasonable rules as may be necessary for the administration of proper treatment to the patient. Even this authority would only continue so long as the party saw fit to remain an inmate of the institute. The framer of the bill evidently attempted to give it the appearance of a proceeding for the appointment of a guardian for the inebriate, but, when the provisions of the act are analyzed, they fall very far short of it. The act is unconstitutional, for the reason that it assigns to the probate judges powers and duties beyond those authorized by the constitution.

Order reversed.