# IN RE ADOPTION OF MARIA AND PATRICIA ZAVASKY. GEORGE SHERMAN AND ANOTHER v. BUREAU OF CATHOLIC CHARITIES AND ANOTHER.[1]

March 19, 1954.

No. 36,197.

[1]Reported in 63 N. W. (2d) 573.

*Orville L. Freeman, Louise A. Herou,* and *Larson, Loevinger, Lindquist, Freeman & Fraser,* for appellants.

*J. A. A. Burnquist,* Attorney General, and *Harold S. Bjornstad,* Assistant Attorney General, for respondent Director of Social Welfare.

*Fred A. Kueppers,* for respondent Bureau of Catholic Charities.

MATSON, JUSTICE.

Appeal from judgments of the district court of Hennepin county denying petitions for the adoption of two minors on the sole ground that the accredited agency or association to whose care and guardianship the minors had previously been committed as dependent and neglected children (M. S. A. 260.11) refused to consent to such adoptions.

We are concerned with these issues:

(1) Whether the term *guardian* as defined in § 259.21, subd. 4 (enacted in 1951), embraces within its meaning the custodial guardianship resulting from a final committal of dependent or neglected children to the care of an accredited association pursuant to c. 260.

(2) Whether Minn. Const. art. 6, § 7, which confers upon the probate court the entire and exclusive jurisdiction over the general subject of guardianship, deprives a division of the district court sitting as a juvenile court (under § 260.03, subd. 2) of jurisdiction to commit dependent or neglected children to the guardianship of an association which has been accredited by law as an agency for obtaining homes for such children (see, §§ 260.11 and 260.12).

(3) Does a district court have jurisdiction to grant a decree of adoption without the consent of the association to whose guardianship a dependent or neglected child has been committed?

These adoption proceedings involve two minor children, Patricia and Maria Zavasky, who, as dependent and neglected children, were on May 27, 1950, pursuant to § 260.11, finally committed by the Ramsey county juvenile court to the custodial guardianship of the

Bureau of Catholic Charities (hereinafter called the bureau) for placement for adoption. On December 19, 1950, both children were placed in the home of petitioners. The petitioners, after having had physical custody of the children for more than six months, filed with the district court of Hennepin county petitions for their adoption. Upon motion the petitions were heard together. The bureau refused to give its consent to the granting of such petitions on the ground that such adoptions would not be for the best interest of the children. No evidence was presented by the bureau in support of its assertion that an adoption by the petitioners would not be for the welfare of the children. The director of social welfare, *because the bureau withheld its consent*, recommended that the petitions be denied. Petitioners and the children are Catholics. The district court, after first finding that the petitioners are financially able to care for, support, and educate the children, denied their petitions on the sole ground that the consent of the bureau was an essential prerequisite herein to the issuance of decrees for adoption.

■ In determining the first issue we must hold that the term *guardian,* as defined in § 259.21, subd. 4, which governs adoptions, clearly embraces within its meaning the custodial guardianship resulting from a final committal of dependent or neglected children to the care of an accredited association as provided for in §§ 260.11 and 260.12. Pursuant to L. 1949, c. 736, an Interim Commission on Domestic Relations Problems was created by the legislature to study, among other things, the laws relating to juvenile courts and adoptions and to report thereon to the next legislative session. The commission's final report clearly shows that it considered and intended that any revision of the statutes governing adoptions (c. 259) should be geared to c. 260 which establishes the procedure for the committal of dependent or neglected children to the custodial guardianship of an association or agency devoted to the purpose of obtaining homes for such children (§§ 260.11, 260.12).[2] The commission's principal recommendations for the amendment of both chapters 259 and 260 were duly enacted by the 1951 legislature (cf. L. 1951,

---

[2]See, Report of the Interim Commission on Domestic Relations Problems, pp. 19 to 23, 43 to 46.

c. 223 and c. 508). The language of L. 1951, c. 223 (now § 260.12), is clearly indicative of a legislative intent that the custodial guardianship of a dependent or neglected child (§ 260.11) should be embraced within the meaning of the term *guardian* as defined in § 259.21, subd. 4, of the adoption act. It is also to be noted that prior to the adoption of the aforesaid 1951 amendments it was recognized that chapters 259 and 260 are, with respect to the adoption of dependent or neglected children, supplementary to each other. In In re Adoption of Anderson, 235 Minn. 192, 202, 50 N. W. (2d) 278, 285, this court said:

"* * * By its very nature, a proceeding for the committal of the person of a dependent or delinquent child to the custody of a statutory agency for placement *for adoption* is simply a protective measure designed to provide the child with guardianship representation and protection as a preliminary step to the finding of suitable foster parents who will give it parental care and protection." (Italics supplied.)

■ We turn to the second issue of whether Minn. Const. art. 6, § 7, which confers upon the probate court the entire and exclusive jurisdiction over the general subject of guardianship, deprives a division of the district court sitting as a juvenile court (under § 260.03, subd. 2) of jurisdiction to commit dependent or neglected children to the guardianship of an association which has been accredited by law as an agency for obtaining homes for such children (see, §§ 260.11 and 260.12). Although the probate court is constitutionally vested with the entire, exclusive, and plenary jurisdiction over the subject of guardianship[3]—the scope of which is to be ascertained by reference to the law as it existed when the constitution was adopted[4]—

---

[3]Jacobs v. Fouse, 23 Minn. 51; State ex rel. Chesley v. Wilcox, 24 Minn. 143, 147 to 148; State ex rel. Martin v. Ueland, 30 Minn. 277, 15 N. W. 245; Kemmetmueller v. Zachman, 220 Minn. 44, 18 N. W. (2d) 590; Jasperson v. Jacobson, 224 Minn. 76, 80, 81, 27 N. W. (2d) 788, 792; 32 Minn. L. Rev. 637; 5 Dunnell, Dig. & Supp. § 7771a.

[4]Jacobs v. Fouse, 23 Minn. 51; State ex rel. Chesley v. Wilcox, 24 Minn. 143; Foreman v. Board of Co. Commrs. 64 Minn. 371, 67 N. W. 207; 5 Dunnell, Dig. & Supp. § 7771a.

this court in State ex rel. Martin v. Ueland, 30 Minn. 277, 281, 15 N. W. 245, 246, speaking through Mr. Justice Mitchell, recognized that under some circumstances a certain concurrent jurisdiction exists in the district court when it said:

"* * * Neither do we mean to decide that there may not be cases where the district court would have concurrent jurisdiction with the probate court, where they involve some additional equitable feature, such as trust or fraud or the like, which of itself, independent of the administration or guardianship, would be sufficient ground for the interference of a court of equity."

Adoption, being wholly unknown to the common law, is purely statutory in common-law jurisdictions.[5] It creates a new status[6] by establishing the legal relation of parent and child between persons not so related by nature. As applied to a minor, the adoption process by its very nature involves, as one of its essential and inseparable elements, a judicial determination of the child's custody. Even though regulated by statute, a change in custodial status, whether arising out of a divorce action or otherwise, constitutes an exercise of equity jurisdiction.[7] The state as *parens patriae* appears for the child as his protector to make the change for him. When a child has been found to be dependent or neglected, the first step in the adoptive process is the commitment of the child to the custodial guardianship of an accredited association which, as an agency of the state, is dedicated to the task of finding a satisfactory adoptive home. The custodial guardianship thereby created is but a procedural device for supplying two essential ingredients of a provident and valid adoption; namely, the finding of suitable adoptive parents and the giving of the necessary statutory consent.

It is significant that this specialized form of guardianship, as an incident of adoption, was not recognized by or known to the law when the constitution was drafted. Since the scope of the exclusive guardianship jurisdiction conferred on the probate court is to be

[5] Am. Jur., Adoption of Children, § 3; 11 Minn. L. Rev. 605, 608.

[6] 11 Minn. L. Rev. 605, 608 to 612.

[7] 17 Am. Jur., Divorce and Separation, § 674; 19 Am. Jur., Equity, § 152.

ascertained by reference to the law as it existed when the constitution was adopted, it follows that the custodial guardianship incident to an adoption was not included in the grant of exclusive guardianship jurisdiction to the probate court. This holds true even though an ordinary probate guardianship is adaptable to the same purpose. We must, therefore, conclude that a division of the district court sitting as a juvenile court, despite Minn. Const. art. 6, § 7, has jurisdiction to commit dependent or neglected children to the custodial guardianship of an accredited association (see, § 260.11) for two reasons; namely, (1) because the appointment of such custodial guardian is merely incidental to the district court's exercise of an independent equitable jurisdiction in adoption proceedings, and (2) because such special form of custodial guardianship, not being known to the law when the constitution was adopted, falls outside the constitution's grant of exclusive jurisdiction to the probate court. In State ex rel. Olson v. Brown, 50 Minn. 353, 52 N. W. 935, 16 L. R. A. 691, this court recognized that in furtherance of the state's role of *parens patriae* certain special guardianships of a public or semipublic nature may be established by the courts other than the probate court without contravening the constitution.

■ Does a district court, under § 259.24, subd. 1, have jurisdiction to grant a decree of adoption without the consent of the association to whose guardianship a dependent or neglected child has been committed? As already noted, adoption proceedings are purely statutory, and the term *guardian,* as defined in § 259.21, subd. 4, embraces in its meaning the custodial guardianship established pursuant to §§ 260.11 and 260.12. Section 259.24, subd. 1, specifically provides that: "No child shall be adopted without the consent of his parents *and his guardian,* if there be one," except in certain enumerated cases which have no application herein. (Italics supplied.) This statutory language is explicit in requiring the guardian's consent and involves no ambiguity to justify any construction to the contrary.

G. S. 1923, § 8626, from which § 259.24, subd. 1, was derived and which contains similar but less exacting language, was construed

by this court in In re Adoption of Mair, 184 Minn. 29, 237 N. W. 596, to require the consent of the child's guardian as a mandatory prerequisite to the entry of a decree of adoption. In the Mair case, the guardian was an individual appointed by the probate court, but that fact provides no basis for a differentiation from the instant case where an accredited association has been validly appointed the custodial guardian of the infants.[8]

A statutory provision which accords to the custodial guardian the same unqalified right as a parent to refuse to consent to an adoption—without any evidentiary showing to justify such refusal other than the unsupported statement that the adoption is not for the best interests of the child—seems drastic, but insofar as such provision is unreasonable the remedy is with the legislature. It goes without saying that not all proposed adoptions are for the best interests of the child and that undoubtedly the findings of an accredited association dedicated to finding adoptive homes for dependent and neglected children should be given great weight by the district court; nevertheless, a serious question arises as to whether the child's interests are best protected by denying the district court all discretionary power to pass upon the validity of a custodial guardian's refusal to consent to an adoption. We can only conclude, however, that the explicit wording of § 259.24, subd. 1, is to be interpreted to mean that the legislature intended to deprive the district court of jurisdiction to pass upon the merits of a proposed adoption if the guardian of the child refuses to give his consent, even though such refusal to consent is unsupported by any evidentiary showing that the proposed adoption is not for the best interests of the child.

---

[8]We have not overlooked In re Adoption of Kure, 197 Minn. 234, 266 N. W. 746, wherein G. S. 1923, § 8626, was construed to mean that the consent of the state board of control was not an absolute prerequisite and that, therefore, the trial court could decree an adoption if it found such consent was unreasonably withheld. Since we are not here directly concerned with the effect of a refusal to consent by the commissioner of public welfare, we need not now construe § 259.24, subd. 1(e), to determine if his refusal to consent is an absolute bar to an adoption.

The judgments of district court are affirmed.

Affirmed.