## LYLE EDWARD EISEL v. ARLENE RENE EISEL, NOW ARLENE SEVY.

110 N. W. (2d) 881.

September 1, 1961—No. 37,894.

*Newton S. Friedman* and *Friedman & Friedman,* for appellant. *James Harper* and *Martini, Perkins, Harper & Gustafson,* for respondent.

OTIS, JUSTICE.

This is an appeal by the defendant from orders of the district court dated May 13, 1959, and February 26, 1960, denying her motions for amended findings which would change custody of the minor child of the parties from plaintiff to defendant. The plaintiff-respondent, Lyle Eisel, is the father, and the defendant-appellant, Arlene Belanger Eisel Sevy, is the mother.

Because the procedural history is material to the decision and somewhat complicated in nature, the chronology of the proceedings is divided into five separate periods, thus:

*First period*—Plaintiff and defendant, who are now approximately 29 years of age, were married on July 21, 1951. Their only child, who is the subject of this litigation, Mark Douglas Eisel, was born on October 27, 1952.

*Second period*—After a series of marital difficulties, including several separations, the mother left the father on February 11, 1957, taking their child with her to her family's home in Superior, Wisconsin. Thereupon the father determined that the mother was not willing to return to their home in Duluth and promptly removed the child from the mother's custody. In a few days he took the child back to the mother but soon thereafter again removed him to their Duluth residence. The next time plaintiff returned the child to the mother, Mark remained in Superior with her until about the middle of March 1957 when plain-

tiff again secured custody and has retained it ever since except for periods of visitation with the mother.

On March 28, 1957, the father brought an action for divorce in which the mother counterclaimed, and on April 8, 1957, the mother's motion for temporary alimony, custody, and support was heard by the Honorable Victor H. Johnson, following which, on April 11, 1957, he entered an order granting the father temporary custody and denying the mother's motion in all other respects except as to attorneys' fees.

*Third period*—The trial of the divorce came on for hearing before the Honorable William J. Archer (retired April 14, 1958) who, after taking testimony on October 23 and 24, 1957, granted a divorce to plaintiff on November 7, 1957, and awarded him custody of the minor child subject to a further hearing in one year.

*Fourth period*—A year later, on November 18, 1958, the mother moved to amend the findings to award custody to her, and a hearing on the motion was had before Judge Johnson on December 4 and 9, 1958 (each party having at that time secured a substitution of attorneys), following which, on December 30, 1958, the court requested an investigation and report by the county welfare boards in Superior and Duluth. On March 7, 1959, the father married one Janis Lundgren, who has subsequently borne him a daughter. After receiving the welfare department reports, the court held an adjourned hearing on March 26, 1959, and entered findings April 3, 1959, denying the mother's motion for custody and again deferring a final determination with respect to permanent custody for another year. Two weeks later, on April 17, 1959, the mother moved the court to amend its findings to give her custody and that motion was denied on May 13, 1959. The mother's notice of appeal from the order of May 13 was served on June 23, 1959.

*Fifth period*—The defendant married one William Sevy on September 8, 1959, as a result of which she moved this court to remand the pending appeal to permit the trial court to conduct an additional hearing in the light of her change in circumstances. This petition we granted on January 7, 1960, and a further hearing was held before Judge Johnson on February 18 and 19, 1960, culminating

in an order dated February 26, 1960, again deferring a final determination of the question of custody for at least 6 months, but otherwise leaving custody and visitation unchanged. On April 21, 1960, defendant served an amended notice of appeal from both the order of May 13, 1959, and the order of February 26, 1960.

■ The trial court has been conscientious and painstaking in its effort to reach a wise and just solution to this very difficult problem. There have been at least three protracted hearings in the matter subsequent to the initial hearing on temporary custody. The question of awarding permanent custody of the child has been pending for over 4 years without a final decision. Although some of the delay has been occasioned by changes in circumstances arising out of the remarriage of both the mother and father, we feel compelled to observe that the ends of justice have not been served by the court's failure to make a final determination during the 3 years the action was pending before it. There comes a time in the life of a minor child when the uncertainty of his legal status may have a serious, adverse effect on his emotional stability and sense of security.[1] Under our statute[2] and pursuant to its inherent equitable powers,[3] the trial court may at any time entertain a petition to amend a decree affecting the custody of a child, based on a substantial change in the circumstances of either a party or the child. Except in the most extraordinary cases, the practice of requiring repeated hearings and leaving the question of permanent custody undecided for an extended period of time is inadvisable and unnecessary. Not only does it unduly engage the attention of already overburdened courts, but it constitutes a serious financial burden on the parties who are required to assume substantial additional legal expenses. Inevitably it aggravates the friction between the parents and adds to the tensions

[1]Rice v. Rice, 181 Minn. 176, 178, 231 N. W. 795, 796; McDermott v. McDermott, 192 Minn. 32, 36, 255 N. W. 247, 248.

[2]Minn. St. 518.17 and 518.18.

[3]Atwood v. Atwood, 229 Minn. 333, 336, 39 N. W. (2d) 103, 105, 34 Minn. L. Rev. 347; In re Adoption of Zavasky, 241 Minn. 447, 451, 63 N. W. (2d) 573, 576; Stoll v. Stoll, 243 Minn. 510, 515, 68 N. W. (2d) 367, 371.

the child is already experiencing. However deplorable may be the consequences of divorce, the parties have a right to a reasonably prompt determination of their status so that they may salvage what they can of their lives and plan the future with some degree of certainty. This they cannot do without having their legal relationship with their children fixed with something approaching finality.

■ Returning to the merits of the case, we are now confronted with a situation which is complicated and obscured by the very fact the minor child has been in his father's custody for over 4 years and will necessarily be subjected to a difficult adjustment if his custody is changed.[4] It is the unhappy duty of the trial court and of this court to decide whether this disrupting factor is outweighed by the manifest advantages of exposing an impressionable 8-year-old boy to the unique influences of a devoted mother. While obviously parents have real and substantial rights in rearing and educating their children, it is axiomatic that such rights are subordinate to the welfare of the child where there is a conflict. If the courts have promulgated a rule of law that a mother is ordinarily the proper person to have custody of a minor child,[5] it is because experience has conclusively demonstrated the wisdom of permitting a child to be brought up under the influence of his mother and not because the mother herself has been accorded any superior, vested right in such custody. We have held that young children should have as much of the companionship of their mother as possible, there being no satisfactory substitute for her care;[6] that such care is indispensable;[7] that nothing is so helpful to an infant as her love.[8] In Johnson v. Johnson, 223 Minn. 420, 429, 27 N. W. (2d) 289, 294, involving the custody of a 3-year-old boy, we stated:

"* * * The supervision of the daily routine of a child of this age

---

[4]MacWhinney v. MacWhinney, 248 Minn. 303, 307, 79 N. W. (2d) 683, 686.

[5]Larson v. Larson, 176 Minn. 490, 492, 223 N. W. 789, 790.

[6]Spratt v. Spratt, 151 Minn. 458, 464, 185 N. W. 509, 187 N. W. 227, 229.

[7]Eberhart v. Eberhart, 149 Minn. 192, 194, 183 N. W. 140, 141.

[8]Newman v. Newman, 179 Minn. 184, 186, 228 N. W. 759, 760.

normally is looked after with greater attention and consideration by the mother, whose natural love promotes concern, care, and sacrifice which may never occur to others not so closely bound. To deny a child of this age his mother's love and care may lead to emotional disturbances, permanently inimical to his well-being. Because of this, on many prior occasions we have interfered where the trial court has taken a child of tender years from the mother's custody."

Only where it appears that custody in the mother will be detrimental to the child will a mother's care, love, and affection yield to the child's welfare.[9]

In determining the question of custody, the trial courts are vested with broad discretion, and appeal courts are reluctant to interfere with their determination. We have not had an opportunity to observe and hear the testimony of the parties and their witnesses.[10] Nevertheless, we are obliged to scrutinize the record and determine whether the trial court was justified in arriving at the decision he reached, resolving all questions of fact in favor of the prevailing party as we must.

■ In awarding temporary custody to the father on April 11, 1957, the court assigned no reason whatever for its decision. It is doubtful whether that order was appealable. Rice v. Rice, 181 Minn. 176, 231 N. W. 795; Minn. St. 605.09(7). Following the trial of the divorce on its merits, Judge Archer granted plaintiff the divorce and awarded him absolute custody, deferring a final decision in the matter for a year, and commenting:

"* * * Ordinarily, this Court awards custody of a minor child to the mother, but the Court finds, in this instance, that the mother is not now in any position to take proper care of said minor child."

We are of the opinion that the court's conclusion in this respect is unsupported by the evidence since at the time of the hearing the mother was living with her parents and had tentative plans to move in with her

---

[9]Christianson v. Christianson, 217 Minn. 561, 563, 15 N. W. (2d) 24, 26; Menke v. Menke, 213 Minn. 311, 312, 6 N. W. (2d) 470, 471.

[10]Molto v. Molto, 242 Minn. 112, 114, 64 N. W. (2d) 154, 156.

grandmother and secure employment. If she was not in a position to take proper care of the child, it was only because the court refused to grant her any support money for that purpose.

At her earliest opportunity under the November 1957 decree, defendant reopened the divorce proceedings to petition again for custody of her child. As a result of that hearing the court entered voluminous findings accompanied by an exhaustive memorandum. Many of the findings were addressed to the mother's behavior as it related to the grounds for divorce. In essence they review her association with another man following her separation and before her divorce, but intimate no immorality on her part and conclude by stating that the relationship was terminated. However, the court, in denying custody to the mother, lays considerable stress on the fact that it was she who left the home and took the child with her and that it was her adamant attitude which prevented a reconciliation. In addition, the court again assigned, as one reason for refusing to change custody, the economic advantages accruing to the father in maintaining the child in his home. The court's memorandum points out that under our decisions the moral fitness of the mother is not necessarily controlling, citing Molto v. Molto, 242 Minn. 112, 64 N. W. (2d) 154. It is undisputed that the mother has been guilty of no immorality, and even the father conceded at the initial hearing and again in December 1958 that his wife was a fit and proper mother. The father's principal complaint is that the mother was not sufficiently attentive to the boy. In support of this charge there was testimony that she sometimes slept late in the morning and permitted the child to dress himself and walk down the street to his grandmother's while the mother was still in bed.

The plaintiff places particular reliance on three cases which he asserts are controlling in favor of affirmance, Dacey v. Dacey, 179 Minn. 520, 229 N. W. 868; Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417; and Bastian v. Bastian, 13 Ohio Opinions (2d) 267, 81 Ohio L. Abs. 408, 160 N. E. (2d) 133, 73 A. L. R. (2d) 1440. It is significant that in both the Dacey and Bastian cases the mother entered a stipulation at the time of the divorce waiving her right to custody. In the Dacey case the mother deserted and moved to Illinois and remarried 3 days after the divorce. Under the circumstances it is ap-

parent she was more concerned with her remarriage than she was with the welfare of her children. The Bastian case is similar, except that the mother retained the right, inherent in Minnesota law, to petition for custody when she was in a position to do so. However, she did not see fit to apply to the court until 5½ years after surrendering custody. A similar background prompted our court to deny the mother custody in the Aske case, where she took no steps to secure review of the divorce decree for 6½ years, during which time we characterized her behavior as irresponsible, consisting of one carousal after another, misconduct (233 Minn. 542, 47 N. W. [2d] 418) "wholly incompatible with the character of a mother to whom the care of a child may be entrusted." In contrast to what we there labeled many years of neglect, the mother in the instant case has, from the inception, never abandoned her son, but has consistently sought through every legal means to retain and regain custody of him from the time the parties were first separated.

We believe that the circumstances of this case are somewhat akin to those in Newman v. Newman, 179 Minn. 184, 228 N. W. 759. There the court found that the mother after her divorce permitted a married man to call on her in the evenings and take her to the theater and out to dinner. The court stated that the evidence convicted the mother of impropriety, that the unconventional friendship found no approval in the court, but that it fell short of establishing that degree of immorality which would make the plaintiff unfit to have custody of her children. We held that there is no substitute for a mother's care absent a breakdown in her moral fiber to a point where it has a detrimental bearing on the children's ideals in relation to their character development. We pointed out that however unwise her friendship, it did not result in neglect of the children,[11] and in concluding we stated (179 Minn. 186, 228 N. W. 760):

"* * * From the very beginning of the administration of justice by the courts of our country, even under the common law rules which have been relaxed by statutes, the custody of very young children has been awarded to the mother, even in some instances where it has been proved

---

[11] 38 Minn. L. Rev. 623, 626.

that she was not morally upon a very high plane, on the broad ground that the welfare of the child is the paramount consideration; and for children from three to six years of age, as here involved, it is unquestionably for the child's welfare that it remain with the mother."

■ It is apparent that the trial court was greatly influenced in his decision by the policy which governed us in Dauer v. Dauer, 169 Minn. 148, 210 N. W. 878, which we cited recently in Anderson v. Anderson, 260 Minn. 226, 109 N. W. (2d) 571. In the Dauer case we awarded custody to a father when a mother without apparent reason left her home. We adopted the theory that the mother's absence may well have been temporary and that she was in a position to resume her family relationship whenever she saw fit. By leaving the home intact we felt the likelihood of a reconciliation was enhanced. The same motives prompted the trial court initially to award custody to the father in Anderson v. Anderson, *supra*. However, in the instant case there has now been a final divorce and both parties have remarried. Hence, the rationale of the Dauer case is no longer applicable.

Judge Johnson in his findings of April 3, 1959, stated:

"* * * That the mother has a sincere interest in and an apparent love and affection for the child."

This finding is amply supported by the vigor and persistence with which she has pursued her remedies to regain custody of her child. Apart from the testimony regarding her proclivity to oversleep while the child was relatively young, and the testimony that she was seen in the company of another man on several occasions after her separation but before her divorce, and the vague accusation of the father that she was inattentive to the child, there is no evidence to support a finding that the welfare of the child required his being in the custody of his father rather than his mother. Viewing the evidence in the light most favorable to the plaintiff, we hold that it was an abuse of discretion to deny the mother custody of her infant son. The matter is therefore reversed and remanded with directions to award permanent custody to the defendant, subject to liberal visitation rights in the plaintiff; to fix the amount of support which the plaintiff shall pay defendant for the maintenance of the child; to permit defendant to remove the child from the jurisdiction of the court provided

it does not seriously interfere with the father's right of visitation; and if necessary to spell out the details of the transfer of custody in a way which will minimize its impact on the child. Defendant is awarded the sum of $250 attorneys' fees for perfecting her appeal, together with her costs and disbursements.

Reversed and remanded.