MICHAEL P. LOBASH v. BONITA A. LOBASH.

167 N. W. (2d) 43.

April 18, 1969—No. 41142.

*Cloutier, Gallagher, White & James* and *Cortlen G. Cloutier,* for appellant.

*Lindquist & Vennum, Thomas Vennum, Richard J. Fitzgerald,* and *Kenneth F. Kirwin,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

OTIS, JUSTICE.

This is an appeal by the mother of two children, now 5 and 8 years of age, from a decision of the district court awarding custody to their father, the plaintiff. The hearing before the trial court was conducted in August 1967. The argument in this court was not presented until February 25, 1969.

Because of the uncertainty of the mother's plans and her unsettled status at the time of hearing, we are of the opinion the trial court court did not abuse its discretion in denying her custody of the children. However, counsel at oral argument has disclosed changes in circumstances which deserve a reconsideration of the custody question upon a proper application by the mother for a modification of the decree based on what has transpired in the intervening 18 months.

For the reasons we have suggested, we do not consider the critical question of the present welfare of the children and the current fitness of the parents to have their custody.

Michael Lobash, the plaintiff, and Bonita Lobash, the defendant, were married on February 27, 1960. He is now 30 years of age, and she is 28. The children who are the subject of this litigation are two sons, Anthony, born November 29, 1960, and Christopher, born July 29, 1963.

What has compounded the trial court's difficulty is the fact that defend-

ant appears to be a devoted and conscientious mother and, at the same time, an unfaithful wife. The court made no finding with respect to her fitness, and, except for the effect her infidelity has on that issue, there is no testimony that she is unfit to have the custody of her children.

Mrs. Lobash admits that in 1964 she was guilty of adultery with a neighbor. At the time of trial, she was pregnant by a Catholic priest who had acted as her marriage counselor and with whom she had an adulterous affair following the separation from her husband.

As a result of her infidelities, Mrs. Lobash required psychiatric care and was hospitalized on two occasions. The first confinement was for 3 weeks in November 1966, and the second for 5 days in March 1967. Both plaintiff and defendant are devout Catholics, and the psychiatrist attributed the mother's depression to a guilt complex. He testified that in his opinion the mother loved her boys and was a fit person to have custody of them.

In mitigation of her derelictions, Mrs. Lobash testified that there was no communication between her husband and herself, that he was parsimonious in the extreme, and that he deprecated and insulted her before the children and her friends. She complained that he had no interest in any social life and showed no warmth or compassion for her. She conceded, however, that he was a good provider.

At the time of trial, the father's plan for the children was to retain them in his parents' home where they would have, in addition, the companionship of his sister, then 17 years of age. The grandparents were then 50 and 52 years of age and acquiesced in this arrangement. The mother, on the other hand, indicated her desire to leave the jurisdiction, move to California where members of her family live, and advised the court she intended to marry the priest who was the father of her unborn child. In awarding custody to the father, the trial court assigned reasons orally from the bench as follows:

"In considering this matter of custody, the Court is concerned and has concerned itself with the type of environmental problems that might result following this divorce, and the prospect of the children being brought up in an environment of considerable indecision as to future plans, as to what is going to happen in view of the situation that exists between the father of

the unborn child of defendant, Bonnie Lobash, and all of these things the Court has considered and weighed.

"The Court feels that it is in the best interest of these two minor children that the custody of them be with the father."

In the event there is a further hearing in the district court, the question of custody will inevitably hinge on the trial court's appraisal of the mother's stability, the likelihood of her creating an enduring bond with her new husband, and the effect of her prior illicit relationships on the well-being of her children. The fact that the mother has been unfaithful does not in itself disqualify her from having custody but does so only if the harmful effects of her indiscretions outweigh the benefits inherent in having her rear her children. Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881; Meinhardt v. Meinhardt, 261 Minn. 272, 111 N. W. (2d) 782; Reiland v. Reiland, 280 Minn. 444, 448, 160 N. W. (2d) 30, 32, which cites with approval Wendland v. Wendland, 29 Wis. (2d) 145, 138 N. W. (2d) 185.

In affirming, we do so without prejudice to Mrs. Lobash's right to seek further consideration of the custody question, based on the change in her circumstances. Lindberg v. Lindberg, 282 Minn. 536, 163 N. W. (2d) 870.

Affirmed.