**In re the Petition to Adopt S.T. and N.T.**

**No. C0–92–1672.**

Court of Appeals of Minnesota.

March 16, 1993.

Review Granted May 18, 1993.

Michael O. Freeman, Hennepin County Atty., Nancy K. Jones, Asst. County Atty., Minneapolis, for appellant Hennepin County Bureau of Social Services.

Wright S. Walling, Gary A. Debele, Walling & Berg, P.A., Minneapolis, for respondents Iskierkas.

Hubert H. Humphrey, III, Atty. Gen., Laurasue Schlatter, Special Asst. Atty. Gen., St. Paul, for respondent Commissioner of Human Services.

Shirley A. Reider, Minneapolis, for respondent Guardian ad Litem.

Considered and decided by LANSING, P.J., and SCHUMACHER and HARTEN, JJ.

## OPINION

SCHUMACHER, Judge.

Respondents Laurie and Robert Iskierka filed a petition for the adoption of S.T. and N.T. Appellant Hennepin County Bureau of Social Services advised the Minnesota Commissioner of Human Resources to withhold consent to the adoption. The Commissioner withheld consent, and the Bureau filed a motion to dismiss the petition for lack of jurisdiction. The district court found that the Commissioner's decision to withhold consent did not deprive the court of jurisdiction where the reasonableness of the Commissioner's decision had yet to be resolved. We affirm.

## FACTS

On May 22, 1989, the Bureau placed S.T. and N.T. in the Iskierkas' home for emergency shelter care. S.T. was one year and five months old at the time of placement. N.T. was six months old. The children are now ages five and four.

S.T. and N.T. are wards of the state. The Commissioner serves as guardian of the children and retains legal custody; the Bureau is an agent of the Commissioner. At the time of placement the Iskierkas were licensed foster care providers and residents of Hennepin County.

The Iskierkas presently live in Carver County. They have a 13–year–old son and three daughters, ages 15, 14 and 12. S.T. and N.T. are of African American heritage; the Iskierkas and their children are Caucasian. The Iskierkas assert that they and their children have "bonded as a family" with S.T. and N.T. This fact, claims the Bureau, "is no more than expected of foster parents fulfilling their contract."

The birth mother's parental rights were terminated on August 29, 1990. The district court denied the mother's motion to vacate its termination order, and this court affirmed in an unpublished decision. *In re Welfare of S.T.*, No. C3–90–2259, 1991 WL 59826 (Minn.App. Apr. 23, 1991), *pet. for rev. denied* (Minn. June 19, 1991).

The Bureau then began to recruit relatives of the children for potential adoptive placement. Most of these relatives lived out of state, and the Bureau requested home studies through the Interstate Compact for the Placement of Children. A relative from Chicago, Illinois was identified as the most suitable prospective adoptive parent. The Bureau claims this relative is a maternal aunt of the birth mother.

In a letter dated January 30, 1992, the Iskierkas informed the Bureau that they desired to adopt the children. The Bureau responded that it was conducting home studies of relatives. The aunt in question visited the children in February 1992. She also visited in March, and had overnight visits in April and May of that year.

The aunt was scheduled to visit the children in June 1992. The Bureau intended that this visit serve as a transition for preadoptive placement with the aunt in July 1992. Such placement is a statutory prerequisite to filing a petition for adoption. *See* Minn.Stat. § 259.22 (1990).

The Iskierkas, allegedly without knowledge of the Bureau's plans to place the children with their aunt, informed the Bureau in May 1992 that they intended to file a petition for adoption. The Bureau refused to consent to adoption by the Iskierkas. Upon the Bureau's recommendation, the Commissioner similarly withheld consent.

On May 15, 1992, the Iskierkas obtained an ex parte order granting them temporary care, custody and control of the children. They also filed a motion for waiver of agency placement, leave to file a petition for adoption, waiver of home study and award of temporary physical care, custody and control of the children. Laurie and Robert Iskierka each submitted an affidavit in support of their motion. The affidavits describe the Iskierkas' home life, parenting capacity and desire to adopt the children.

The Bureau filed responsive motions on June 18, 1992. It sought to change venue from Carver to Hennepin County. It also requested that the court deny waiver of agency placement, dismiss the petition for adoption for lack of consent, and deny the award of temporary custody. The Bureau filed an affidavit of one of its social workers, Richard Hughes. It is apparent from the affidavit that a relative desired to adopt the children and that the children were not of the same race as the Iskierkas.

In an order dated July 20, 1992, the district court refused the request for a change in venue, granted the Iskierkas' motions to waive agency placement and allowed the Iskierkas to file a petition for adoption with the court. The court also ordered that temporary physical custody of the children remain with the Iskierkas. The district court rejected the Bureau's claim that the case should be dismissed

because the Bureau had not consented to the adoption:

> The withholding of consent by the Commissioner does not affect the filing of the petition or divest the court of jurisdiction to hear the petition. Consent required under Minn.Stat. § 259.24 is for final adoption, not for filing of a petition. In addition, the lack of consent does not mandate the eventual denial of the proposed adoption as a determination must be made as to whether the consent was unreasonably withheld.

On August 19, 1992, the Bureau petitioned this court for a writ of prohibition restraining the district court from enforcing its order. This court denied the petition on September 1, 1992, finding that a direct appeal provided an adequate remedy. The Bureau then appealed the district court's order.

### ISSUES

1. Does the district court have jurisdiction to hear a petition for adoption when the Minnesota Commissioner of Human Resources refuses to consent to such adoption?

2. Is the Commissioner's consent to adoption required before a petition for adoption may be submitted to the court, or is such consent merely required for the adoption itself?

### ANALYSIS

■ An order granting or denying a pretrial motion to dismiss for lack of jurisdiction is appealable of right. *Hunt v. Nevada State Bank*, 285 Minn. 77, 88–89, 172 N.W.2d 292, 299–300 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970); *Miller v. City of St. Paul*, 363 N.W.2d 806, 809 (Minn.App.1985), *pet. for rev. denied* (Minn. Apr. 26, 1985). The Bureau asserts that under Minn.Stat. § 259.24 (1990), the Commissioner's reasonable refusal to consent to an adoption divests the district court of jurisdiction. Interpretation of a statute is a question of law which this court reviews de novo. *See Hibbing Educ. Ass'n v. Public Employ-*

*ment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

1. Minn.Stat. § 259.24, subd. 1 (1990) provides: "No child shall be adopted without the consent of the child's parents and the child's guardian" except in certain enumerated circumstances. When parental rights have been terminated, the

> commissioner or agency having authority to place a child for adoption * * * shall have the exclusive right to consent to the adoption of such child.

Minn.Stat. § 259.24, subd. 1(e). The statute also provides that consents "shall" be filed in the adoption proceedings "before the matter is heard." Minn.Stat. § 259.24, subd. 5.

■ The Bureau asserts that the district court has no jurisdiction to hear a petition for adoption unless the Commissioner consents to the adoption. It cites a 1954 supreme court decision in which the court interpreted the consent requirements of the adoption statute as follows:

> [A]doption procedures are purely statutory[.] * * * This statutory language is explicit in requiring the guardian's consent and involves no ambiguity to justify any construction to the contrary.
>
>     \*      \*      \*      \*      \*      \*
>
> * * * We can only conclude * * * that the explicit wording of § 259.24, subd. 1, is to be interpreted to mean that *the legislature intended to deprive the district court of jurisdiction* to pass upon the merits of a proposed adoption if the guardian of the child refuses to give his consent, even though such refusal to consent is unsupported by any evidentiary showing that the proposed adoption is not for the best interests of the child.

*In re Adoption of Zavasky*, 241 Minn. 447, 452–53, 63 N.W.2d 573, 577–78 (1954) (emphasis added). The *Zavasky* court acknowledged that the "unqualified" right of a guardian to refuse consent "seems drastic," but that "insofar as such provision is unreasonable the remedy is with the legislature." *Id.* at 453, 63 N.W.2d at 577.

In 1974 the legislature amended the statute construed in *Zavasky* by adding subdivision 7 to section 259.24, as follows:

Consent to an adoption shall not be unreasonably withheld by a guardian, who is not a parent of the child, by the commissioner or by an agency.

1974 Minn.Laws ch. 66, § 4. This provision subjects the Commissioner to a standard of reasonableness. Because the Commissioner's statutory right to refuse to consent to an adoption is no longer "unqualified," the statute no longer precludes judicial review:

There is a presumption in favor of judicial review of agency decisions in the absence of statutory language to the contrary.

*Minnesota Pub. Interest Research Group v. Minnesota Envtl. Quality Council*, 306 Minn. 370, 376, 237 N.W.2d 375, 379 (1975) (footnote omitted). Given the presumption of judicial review, and the likelihood that the legislature intended the standard of reasonableness to be capable of enforcement, we hold that the district court has jurisdiction to determine whether the Commissioner's decision to withhold consent was unreasonable.

2. The Bureau asserts that if in fact the Commissioner's decision is subject to judicial review, the adoption proceeding cannot be heard until the court has made a preliminary determination that the Commissioner's consent was unreasonably withheld. This preliminary determination, argues the Bureau, should be limited in scope and should not be equated with a determination of the best interests of the children.

■ Deference should be shown by courts to an agency's expertise and special knowledge in the field of its technical training, education and experience. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977); *see also Cable Communications Bd. v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984); *Minnesota Power & Light Co. v. Minnesota Pub. Utils. Comm'n*, 342 N.W.2d 324, 329 (Minn.1983). A reviewing court must not substitute its judgment for that of the agency if the record supports the agency's determination. *Dakota*

*County Abstract Co. v. Richardson*, 312 Minn. 353, 356, 252 N.W.2d 124, 126–27 (1977).

The Bureau points out that the facts before the district court clearly supported the Commissioner's decision to withhold consent. The district court was aware that a relative had been identified as a suitable adoptive parent and that S.T. and N.T. are not of the same race as the Iskierkas. Minn.Stat. § 259.255 (1990) provides as follows:

The authorized child placing agency shall give preference, in the absence of good cause to the contrary, to placing the child with (a) a relative or relatives of the child, or, if that would be detrimental to the child or a relative is not available, (b) a family with the same racial or ethnic heritage as the child, or, if that is not feasible, (c) a family of different racial or ethnic heritage from the child which is knowledgeable and appreciative of the child's racial or ethnic heritage.

As the supreme court recently held,

adoptive placement with a family member is presumptively in the best interest of a child, absent a showing of good cause to the contrary or detriment to the child.

*In re Welfare of D.L.*, 486 N.W.2d 375, 380 (Minn.1992), *cert. denied*, — U.S. —, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). The Bureau argues that, based on these presumptions, the district court was compelled to find that the Commissioner's decision to withhold consent was reasonable. Because the Commissioner was not unreasonable in withholding consent to the adoption, it argues, the district court is deprived of jurisdiction to hear the matter further.

Minn.R.Evid. 301 states that a presumption in favor of one party imposes the burden of going forward with the evidence on the other party. The adoption statutes provide specific grounds for challenging presumptions favoring adoptive placement with relatives or same race families. For example, Minn.Stat. § 259.255 enumerates preferences for the placement of children "in the absence of good cause to the contrary." It also provides that children

should not be placed with relatives when such placement would be "detrimental to the child". *Id.* The supreme court has recognized that the presence of facts giving rise to the statutory presumptions

> does not mean that relatives' adoption petitions must be granted automatically. The terms "best interests," "good cause to the contrary" and "detriment" do not lend themselves to standardized definitions. The best interests of potential adoptees will vary from case to case, and the trial court retains broad discretion because of its opportunity to observe the parties and hear the witnesses.

*D.L.*, 486 N.W.2d at 380.

In the present case, the district court specifically reserved the question of reasonableness for later determination. The court did not take evidence on the matter, so the Iskierkas have not yet had an opportunity to rebut the presumptions in favor of the Commissioner's decision. Even under the narrow standard of review urged by the Bureau, the record is insufficient to support the Commissioner's decision.

Furthermore, it is not clear that agency decisions regarding adoption should be reviewed under a narrow standard where parental rights have been terminated:

> [I]t is clear that the judicial branch has an independent interest, *and significant independent authority*, to guard the welfare of children who are wards of the state after parental termination.

*D.L.*, 486 N.W.2d at 379 (emphasis added). Nor do we find it a simple matter to distinguish between the best interests of the children and the reasonableness of the Commissioner's decision to withhold consent to the adoption. A decision contrary to the children's best interests would be unreasonable per se. As the supreme court stated in *D.L.*,

> legislative enactments on the placement of children are not "beyond the control of the courts. The cardinal principle in such matters is to regard the benefit of the infant as paramount * * *."

*D.L.*, 486 N.W.2d at 379 (quoting *State ex rel. Flint v. Flint*, 63 Minn. 187, 189, 65 N.W. 272, 273 (1895)).

We find that the district court correctly interpreted Minn.Stat. § 259.24 as requiring the Commissioner's consent for final adoption, rather than to the filing of a petition for adoption. The question of whether the Commissioner's consent was unreasonably withheld requires consideration of the best interests of the children. These interests can best be determined in the context of an adoption proceeding. Although deference should be accorded the Commissioner's expertise in this matter, the district court retains an independent interest and authority where the children in question are wards of the state due to parental termination.

Affirmed.