JOAN C. GUMPHREY, NOW KNOWN AS
JOAN C. ONDICK, v. JAMES B. GUMPHREY.

115 N. W. (2d) 353.

May 18, 1962—No. 38,454.

516

*Dorfman & Rudquist,* for appellant.
*Firestone, Fink, Krawetz, Miley & O'Neill,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court amending a decree of divorce so as to transfer custody of the minor child of plaintiff, Joan C. Gumphrey, his mother, to his father, defendant, James B. Gumphrey.

The parties were married December 16, 1950. Their only child, Robert, was born July 17, 1952. On January 5, 1955, plaintiff was granted an absolute divorce from the defendant on the grounds of cruel and inhuman treatment and was awarded exclusive custody of the child.

In August 1960 the defendant moved the district court for an order modifying the decree by awarding custody to him. The court ordered an investigation made by the Hennepin County Department of Court Services as to the relative fitness of the parties for custody, awarding custody of the child to his maternal grandmother pending the completion of the investigation. Reports of the Department of Court Services dated October 27, 1960, January 13, 1961, and February 10, 1961, were filed with the court. Hearings were held on February 13 and 28 at which testimony was taken and the reports introduced into evidence. On March 2 the court ordered that the decree be amended to award custody of the child to the defendant. Thereafter, plaintiff moved the court to vacate its order. After a hearing on that motion, the court issued a new order on April 3 in which it vacated the order of March

2 and, based upon detailed findings of fact, ordered that the original decree be amended to award custody of Robert to defendant on a probationary basis under the supervision of the Department of Court Services and subject to plaintiff's right to reasonable visitation. She appealed to this court from that order.

The court found, among other things, that in 1955 plaintiff married one Andrew Ondick in Iowa, who, according to her statement, was on parole for statutory rape and had one previous rape charge, which had been reduced to assault; that while they were living in California with Robert, Ondick was convicted of some offense having to do with a check charge; that the boy was moved frequently while living there and had attended four different schools by the time he was in the second grade.

The court also found that plaintiff returned to Minnesota in October 1959 and placed her child with his maternal grandmother with whom he lived until about Christmas 1960; that at the time of the first investigation report on October 27, 1960, plaintiff stated to the counselor making the investigation that she knew that she could not give the child good care as she had been unemployed and also quite nervous and upset about her present marital situation; that in April 1960 plaintiff rented and moved into a seven-room furnished house in Minneapolis, but did nothing about having her child live with her until the school Christmas vacation in 1960, when she took him into her home without obtaining consent of the court.

The findings also disclose that plaintiff had taken the child with her to beer parlors where she had been seen teaching him "bumper pool"; that her absence from the home without adequate care and supervision for the boy was not conducive to his welfare; that she was working from 6 p. m. to 1 a. m., six nights a week; that she was evasive in her statements to the counselor regarding her source of income, her employment, the circumstances concerning the rental of the home in which she lives, and the religious training of the child; that her testimony regarding his religious training was false as to the church he attended; and that she told the counselor that she did not feel she had much to offer in the way of a plan or security for the child in the future.

The court also found that defendant and his present wife presented

a pattern of greater stability and consistency for the child than plaintiff, and that under the circumstances the welfare of the child would be served better by being with defendant and his present wife, under the supervision of the Department of Court Services, where continuing supervision could be given and his progress noted from time to time by the court. Based on the foregoing findings the court ordered that the divorce decree be amended.

Plaintiff claims that the court erred (a) in relying upon hearsay statements and other incompetent and inadmissible evidence contained in the reports of the Department of Court Services; (b) in implicitly finding the plaintiff to be an unfit person to have custody of the child; and (c) in finding that the best interests of the child required that custody be awarded to the defendant.

Plaintiff argues that the findings of the court are based largely upon reports of the Department of Court Services; that they are replete with unverified hearsay statements and appear to exhibit a clear bias against her; that a purely superficial investigation was made of plaintiff, her employment, living quarters and rental arrangements, and reputation and character. She asserts that the reports are full of gossip, insinuations, and innuendoes unfavorable to her, citing as an example a statement of an alleged neighbor that he saw a young couple leaving plaintiff's home in the morning but did not see them return. Plaintiff testified that from April 1960, when she rented and moved into her home, until Robert came to live with her, she lived alone. She also claims that the reason she did not take Robert to live with her until the Christmas holidays of 1960 was that she was working nights and thought it would be inconvenient for the boy. On the other hand, she contends that it does not appear that any real investigation was made of the defendant's employment, reputation, character, or the basis on which he rents his living quarters.

It is well established in Minnesota, as plaintiff concedes in her brief, that in custody matters the trial court has broad discretionary powers and that where parents are divorced, the welfare and best interests of the child are paramount in determining which parent shall have custody. See, Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881. The ultimate question to be determined by the court in such cases is

whether the best interests of the child require a modification of the order. Meinhardt v. Meinhardt, 261 Minn. 272, 111 N. W. (2d) 782.

Upon a motion to modify custody provisions of a divorce decree the court is not limited to any particular line of inquiry, nor is it bound by the strict legal rules governing the introduction of evidence. Its order and direction in that respect cannot be subject to the same legal tests usually applicable in the trial of causes. The test in determining the validity of an order of the court in such proceedings is whether there was an abuse of discretion. Arne v. Holland, 85 Minn. 401, 89 N. W. 3; In re Adoption of Jaren, 223 Minn. 561, 27 N. W. (2d) 656.

Plaintiff claims, however, that even so the party seeking a change in custody has the burden of establishing by clear and convincing evidence facts warranting such a change, citing, among other cases, Thompson v. Thompson, 238 Minn. 41, 55 N. W. (2d) 329. It is her position that defendant failed in his burden of proof and that upon the evidence in this case it was an abuse of discretion on the part of the court to award custody of Robert to his father.

Thompson v. Thompson, *supra,* involved original proceedings for a writ of prohibition to restrain the district court from proceeding with the determination of an application for a change in the custody of a minor child. In a decree divorcing the parents in April 1949, the mother was given custody of their 5-year-old child, with a separate provision requiring the father to support him. In May 1952 the father moved for an order amending the decree to grant him custody of the child upon the ground that the mother was not a fit and proper person to have such custody. Without going into detail as to the proceedings, that case presented the question whether either of the divorced parties was entitled, as a matter of right, to a hearing in court upon a motion to change the custody of the minor child after such custody had been awarded to one of them in a divorce decree. We stated that our statute prescribed no specific procedure but that the general rule is that in proceedings for the modification of orders, judgments, or decrees in divorce relative to the custody of a minor child, notice and an opportunity to be heard are required whether provided for by statute or not. Quoting from 27 C. J. S., Divorce, § 317c(6), the court stated the rule to the effect that there could be no change of custody without a hear-

ing, at least when a hearing is demanded, and one who seeks to modify the decree is entitled to a hearing upon presenting adequate grounds for modification; that the determination of the question should be based upon testimony of witnesses tested by cross-examination rather than merely on affidavits; that the question must be determined on evidence produced in court rather than on information obtained by private investigation; and that hearsay evidence alone is insufficient to support a modification of a custody order.

It is clear that the decision in the Thompson case was not intended to preclude the trial court from considering reports of the Department of Court Services. This court has often approved the use of such reports. In Christianson v. Christianson, 217 Minn. 561, 562, 15 N. W. (2d) 24, 25, we affirmed an order refusing to grant custody to the mother (defendant), noting that the trial court had "had an investigation made by the child welfare board of the county of the conditions in defendant's home. The report made to the court by the welfare board was adverse to defendant." In Lammi v. Lammi, 244 Minn. 568, 70 N. W. (2d) 456, we quoted extensively from an affidavit of the husband; from a report of the Ramsey County Welfare Board; and from a report of the county probation office. Judge Edward F. Waite, in *Children of Divorce in Minnesota: Between the Millstones,* 32 Minn. L. Rev. 766, 768, said that in family court cases "the assistance of expert social workers is always useful and often essential to any assurance of wise action."

Though the reports contained hearsay, they were furnished not by private investigations but by an arm of the court, the Department of Court Services. The court did not attempt to make the reports conclusive, but afforded the parties a full hearing at which testimony could be adduced and cross-examination employed. Plaintiff made little attempt to rebut the matters contained in the reports and cannot now complain that they were unfavorable to her. Moreover, plaintiff admits in her brief that the reports, having been offered in evidence without objection, were properly received, as hearsay evidence is admissible if not objected to.

Plaintiff cites Lammi v. Lammi, *supra,* in support of her position. We do not regard it as controlling. We held in that case that the trial

court erred in taking custody from the mother when there was nothing in the record which in any way reflected on her character or fitness or which failed to justify her continued custody of her boys, and when the mother's devotion to the children established beyond doubt that their welfare would best be served by leaving their custody with her.

It is our opinion that the evidence justified the findings of the trial court and that its actions were not arbitrary, unreasonable, or an abuse of discretion under the record here. Neither do we consider the assignments of error raised by the plaintiff as constituting reversible error. The record shows that a hearing was held before the Honorable Theodore B. Knudson, Family Court Division; that both plaintiff and defendant were represented by their respective counsel; and that each of the parties, as well as their respective witnesses, testified.

We recognize the established rule in this jurisdiction that, other things being equal, the welfare of the child of tender years is best served by being left in the care of his mother. However, as we have so often stated, the courts give paramount consideration to the welfare of the child in determining his custody and change of custody may be made where the circumstances of the parties have been so altered that the welfare of the child will be best served by the change. Meinhardt v. Meinhardt, *supra;* see, also, Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69.

The custody was placed in the defendant on a probationary basis. In any case, of course, the district court may at any time entertain a petition to amend the decree regarding the custody of the child, based on substantial changes in circumstances of either parent or child. Eisel v. Eisel, *supra.*

Affirmed.