# FRED HASKELL CURRIER, JR. v. GERALDINE MARY CURRIER.

136 N. W. (2d) 55.

June 18, 1965—No. 39,203.

*Joseph Robbie* and *Peter Lindberg,* for appellant.
*Thomas E. Dougherty,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for divorce wherein plaintiff, Fred H. Currier, Jr., and defendant, Geraldine M. Currier, each sought custody of their three minor children. Plaintiff's action was based upon cruel and inhuman treatment, and defendant interposed a cross complaint for divorce on the same ground.

Pending trial and in its final order for judgment, the court granted custody of the children to defendant but with certain restrictions as to Catherine Currier then aged eleven years. These provided that her custody was subject to the supervision of the Department of Court Services, which in turn was authorized to delegate such supervision of custody to the Family and Children's Service of Hennepin County, with authority for foster home care assignment if necessary. Similar provisions were included in the award of custody determined in the final divorce decree, wherein defendant was awarded a divorce from plaintiff.

At the time of trial plaintiff and defendant were both 35 years of age. They were married June 11, 1949. Their children are as follows: Catherine Mary Currier, born December 5, 1951; Thomas Michael Currier, born October 23, 1952; and John Robert Currier, born June 18, 1958. During the pendency of the action the Department of Court Services, in conjunction with Family and Children's

Service of Hennepin County, acting under the order above described, assigned Catherine to the foster home of Mr. and Mrs. Lawrence Roy with limited visitation rights to her parents and paternal grandparents. The other two children were left with defendant. Catherine entered the Roy home on May 25, 1962, and continued to live there until June 1964. The order awarding a divorce to defendant was entered in July 1963.

The present appeal is from an order denying plaintiff's motion for amended findings or a new trial. It is plaintiff's contention here that (1) the evidence is not sufficient to justify denying the mother, father, and paternal grandparents the actual custody of Catherine, or the delegation of such custody to the supervision of the Family and Children's Service, and Catherine's placement in a foster home; (2) it was error to deny counsel for the parties the right to talk privately with Catherine prior to and during the trial or to use her as a witness therein; (3) it was error for the court to question Catherine in chambers outside of the presence of the parties and their counsel; and (4) the evidence is inadequate to support the judgment granting defendant a divorce from plaintiff.

The evidence disclosed that a bitter contest for Catherine's custody had developed between her mother and her paternal grandparents, Mr. and Mrs. Fred H. Currier, Sr. It established that shortly after her birth defendant had requested these grandparents to take care of Catherine in their home so that defendant might obtain employment to aid in meeting the financial requirements of her family; that subsequent to this the two sons had been born and that they had resided in the home of their parents; that because of the sickness of one of the boys and because of defendant's work requirements, Catherine continued to reside with the grandparents for long intervals over a number of years; that subsequently, when marital discord developed between the parties, defendant requested that Catherine be returned to the family home but the grandparents had refused this request and it became necessary for defendant to resort to habeas corpus proceedings to procure her daughter; that during the intervals when Catherine resumed living with her parents, her paternal grandfather had made it his

practice to visit her several hours each evening; and that although some of these visits were at defendant's request, most of them evidenced his desire to be with his granddaughter to the exclusion of the other two children and added to the discord and tension existing.

On May 25, 1962, because of the friction which developed under the circumstances described, and upon a report of Dr. Gove Hambidge, a court-appointed psychiatrist, the Family and Children's Service, acting under the court's order above described assigned Catherine to the foster home of Mr. and Mrs. Lawrence Roy, where she continued to live for the period indicated. In this procedure the Family and Children's Service strictly limited the visitation rights of all parties so that to a very large extent Catherine was denied social relationships with her parents, her grandparents, and her younger brothers. In its findings in the divorce action the court determined:

"a. That in January, 1960, the plaintiff, during an argument with the defendant, pushed the defendant down and tore the telephone off the wall when she tried to call her mother.

"b. That on many occasions during the marriage, the plaintiff would nag the defendant about purchasing new or different automobiles, and on many occasions he extravagantly used money to purchase new or different automobiles.

"c. That on several occasions during the marriage of the parties, the plaintiff exhibited unreasonable jealousy and suspicion of the defendant.

"d. That on many occasions during the marriage, the plaintiff would unjustly criticize the defendant for the way she handled the family finances.

"That all of these acts on the part of the plaintiff have caused the defendant to be nervous and upset, and has caused her to become physically ill so that it would be unsafe for her to any longer cohabit with the plaintiff."

In its decision the court awarded defendant the furniture and homestead of the parties, the latter being subject to a mortgage, and required plaintiff to pay $30 per week for support of the minor children. At that time the court further determined:

"That in the best interest of said minor children, the defendant should be awarded the exclusive permanent custody of the two minor children, Thomas Michael Currier and John Robert Currier, subject to the right of the plaintiff to visit said minor children at reasonable times.

"In the best interest of the minor child, Catherine Mary Currier, the custody should be awarded to the defendant, but such custody shall be under the supervision of the Department of Court Services, which * * * shall be authorized to have * * * supervision of such custody delegated to the Family and Childrens' Service of this County, with authority for foster home care assignment, if deemed necessary to the best interest of said child, and with the right of the plaintiff to visitation, upon arrangements made by and through said Family and Childrens' Service."

In a memorandum attached to its order for judgment, the court stated:

"Most of the many days of trial had in this were taken up with witnesses whose testimony was elicited for the purpose of assisting the Court in its determination of the permanent custody of the child Catherine Mary Currier. All other issues, including the custody of the other young children of the marriage, were of secondary importance. And the battle—no other word seems adequate—for the custody of Catherine was, the record clearly shows, not between the parties to this suit for divorce—not between the plaintiff-father and defendant-mother, but between the paternal grandparents and the defendant-mother. The record also clearly shows that the greatest casualty of this battle was a gentle, loving, intelligent and very wonderful little girl who, bewildered and confused by the hatred, bitterness and animosity between the adults she loved, who pulled at her and pushed away the others she loved, sought refuge by an attempted mental escape from reality and an impossible and unsuccessful attempt to be two little girls so she could please each of the two factions. The emotional and psychological damage done to this girl by those who profess to love—and actually do love—her deeply, has been partially repaired through treatment and foster home care and may be completely repaired by further treat-

ment, the passage of time and a final determination of the custody question.

"The law involving custody in this type of case is too well settled to require citations * * *. Suffice it to say, that when the mother of children of the ages of these with whom we are concerned is a fit and proper person to care for the children, and is able and desirous of so doing, all other claimants to the custody of these children must yield.

"So it must be here. The Court is completely satisfied that this defendant-mother loves and will care for the children to the utmost of her ability and that she is a fit and proper person to have custody of all the children, and that the welfare of all the children would be best served by granting custody to her.

"The foregoing determination makes it unnecessary to dwell upon the qualifications of the father for custody or of, as the testimony indicates [what] would happen here if custody were granted to him, the effect of legal custody in him and physical custody in the paternal grandparents [with whom plaintiff then resided]. They are, without doubt, good people who would love and provide for the child Catherine to the utmost of their capacities. But, as stated before, their claim is secondary and must yield to that paramount claim of the mother."

In his brief plaintiff's counsel, after summarizing a portion of the evidence submitted, states:

"All of this testimony makes it abundantly clear that the parental rights of her [Catherine's] father and mother should not have been set aside for a foster home arrangement. * * * if her father and mother were both unable to care for Cathy, the grandparents had a superior right to any foster home arrangement. None of this testimony is overcome by the 45 minute interview of Dr. Hambidge or by his subsequent examination of Cathy in the midst of trial (He had not seen Cathy from the single interview in September, 1961 until after appellant had presented his case.) No claim was made that the grandparents should have custody. But appellant's plan as Cathy's father was to furnish her a home with him in the residence of the grandparents. There she could continue the same life she had led through half of her

lifetime. There she could be visited or could visit her mother on regular occasions."

At the time of presentation of this case here, defendant's counsel disclosed that in June 1964 pending this appeal Catherine had returned to live at home with her mother and brothers with the consent and approval of the Department of Court Services; and that plaintiff was in arrears on the monthly payments required and had left the state in January. Counsel for plaintiff did not dispute such statements.

■ We have carefully examined the extensive testimony presented at the trial and find nothing therein to indicate that defendant was in any way unfit or unqualified to have custody of her children, including Catherine. While early in her marriage and during the time she was working, the grandparents, to a large extent, had looked after and cared for Catherine, this would not establish that defendant was unfit for her custody or that when economic circumstances permitted she would not be entitled to her return to the family home. We have frequently held that in divorce proceedings the mother of a young child, if a fit person, is the proper one for its custody. McDermott v. McDermott, 192 Minn. 32, 255 N. W. 247; Larson v. Larson, 176 Minn. 490, 223 N. W. 789; Volkman v. Volkman, 151 Minn. 78, 185 N. W. 964; Eberhart v. Eberhart, 149 Minn. 192, 183 N. W. 140. Under the evidence here the court did not err in awarding custody of her three young children to defendant.

As indicated above, since June 1964 Catherine has lived with her mother and two younger brothers in her mother's home. Apparently this arrangement, which was directed by the Department of Court Services and the Family and Children's Service, has worked out satisfactorily, and accordingly questions as to whether the court exceeded its authority in authorizing foster home care for Catherine or as to whether it was to her best interests to be assigned to a foster home are presently moot. Under the provisions of Minn. St. 518.17,[1] which authorize

---

[1]Minn. St. 518.17 provides: "Upon adjudging the nullity of a marriage, or a divorce or separation, the court may make such further order as it deems just and proper concerning the care, custody, and maintenance of the minor children of the parties and may determine with which of the

the court in divorce proceedings to make such orders as it deems just and proper concerning the custody of minor children, the order described was proper. Otherwise, the continuous tension and friction existing between defendant and the paternal grandparents of Catherine might well have resulted in permanent personality damage to all of the children. It may be suggested, however, that any general policy of the Court Services which denies to a child without fault reasonable opportunity for associating with her family and which directs the strict visitation and surveillance requirements which were imposed upon Catherine here would not meet with the approval of this court.

Plaintiff complains of the procedure directed by the court under which it interviewed Catherine without the presence of counsel for either of the parties. The interview was transcribed and a copy of the transcript furnished to each party's counsel. It forms part of the record here. Therein Catherine, when asked by the court with which of her relatives she wished to live, replied, "I want to live with my mother" and "Or my dad or grandpa just the same." It is obvious from her answers that at that time her mind was still in doubt and that her primary object was not to offend any of the people named, all of whom she loved. We do not feel that the court erred in this procedure or by not requiring Catherine to appear and testify in the action, or to submit to private interviews with counsel. No doubt it concluded, as it might in its discretion, that such procedure would reveal little if anything additional which would be of assistance in determining the issue of custody. See, Arne v. Holland, 85 Minn. 401, 89 N. W. 3; Aske v. Aske, 233 Minn. 540, 543, 47 N. W. (2d) 417, 419; Jones v. Jones, 242 Minn. 251, 264, 64 N. W. (2d) 508, 516.

The evidence upon which defendant was awarded a divorce would appear to be adequate therefor. It would support findings that since the marriage of the parties plaintiff's conduct in physically assaulting defendant at times; in his manifestations of jealousy and suspicion toward her; and in disregarding his family responsibilities were such as to affect her health and to cause her physical illness. Both

parents they, or any of them, shall remain, having due regard to the age and sex of such children."

parties were desirous of the divorce, and under all the circumstances it seems clear that the trial court's determination was proper. See, Thompson v. Thompson, 227 Minn. 256, 35 N. W. (2d) 289; Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154.

The order appealed from is affirmed. Defendant is allowed her costs and disbursements herein. Her counsel prepared no brief in connection with this appeal but did appear for oral argument. Allowance of $250 attorney's fees is made for his services herein.