# THOMAS R. BENNETT, BY HIS GUARDIAN AD LITEM, CHARLES A. JOHNSON, v. PATRICIA JO BENNETT.

152 N. W. (2d) 187.

July 14, 1967—No. 40,045.

*Adamson, Dailey & Kunard,* for appellant.
*Johnson & Johnson,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the District Court of Blue Earth County denying the motion of defendant wife, Patricia Jo Bennett, for a change of custody of her 3-year-old daughter, Tammy Sue, to her from the mother of plaintiff husband to whom custody had been granted by a divorce decree. Defendant contends that the trial court abused its discretion in refusing to modify the original judgment so as to transfer custody of the child to the natural mother.

From the record it appears that Thomas R. Bennett and Patricia Jo were married on November 11, 1961, five days after Thomas had made a 4-year commitment to serve in the Marine Corps. At that time he was 18 years of age and she was 17. Their child was born May 10, 1962. The parties lived together in California, where Thomas' outfit was pre-

paring for overseas duty, until April 1963, when Thomas departed for Guam and the mother and baby returned to their original home in Mankato. Shortly after defendant returned home, she began keeping company with one Bernard Miller, a gas-station attendant. She wrote letters to her husband indicating that she was losing interest in him and was seeing another man. The letters prompted the husband to return, and late in 1963, while home on leave, Thomas commenced the proceedings which culminated in the divorce and custody decree.

In the divorce proceedings the trial court found that the child's welfare required that she be placed in the custody of her paternal grandmother, Myfanwy Lewis, as her father would be away in the Marine Corps and her mother was "not a fit and proper person to have care, custody and control of the minor child." Originally, Patricia agreed to give up custody of her daughter. It is undisputed that Thomas' mother is and has been a careful provider for the child. This conclusion is supported by a great deal of evidence from neighbors and relatives who testified that the child is well cared for and happy. Even Patricia admitted this.

"Q. Would you say that the care [Myfanwy Lewis] has given to Tammy has been excellent?

"A. Yes, it has."

Patricia gave birth to a second child in May 1964. She immediately gave up the child to adoption because "I didn't have any money." She claims her former husband is the father of this child, but he denies it. Miller also denies that he is the father of the child, although he and Patricia admit that they plan to marry at some uncertain future date. At the present time Tammy lives with the paternal grandmother, Myfanwy Lewis. She is 48 years of age, a widow, and works full time at the J. C. Penney Company store in Mankato. She has her own home and rents out part of it. When Mrs. Lewis is at work, Tammy is left with a neighbor, Mrs. Rauchman. Thomas Bennett contributes $95 per month to the child's support, including babysitting expenses which come to $10 or $15 per week. Mrs. Lewis has one other son, a student at Mankato State College. She is apparently both able and willing to take care of her granddaughter. The evidence indicates that she is devoted to her grandchild

and provides a good home for her. The evidence supports the trial court's conclusion that Patricia would not be a "fit and proper" guardian because of her limited financial means derived from a $45-per-week income as a waitress, her inability to hold jobs, her capricious exercise of visitation rights, and her overall immaturity. This evidence includes the testimony of Marylove Maloney, a county caseworker.

In support of her contention that the best interests and the welfare of the child would be served by placing her with the mother, defendant relies on Meinhardt v. Meinhardt, 261 Minn. 272, 111 N. W. (2d) 782, and Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881. We pointed out in Meinhardt that, other things being equal, the interests of the child are best served in custody of the natural mother. In the instant case, other things are not equal. There is no choice here between equally suitable homes. The choice is between a home to which the child has grown accustomed and no ascertainable home. Eisel is cited for the proposition that only where custody in the mother will be detrimental to the child will the court place the child elsewhere. There, an 8-year-old boy was placed in the custody of his mother but only after the mother had remarried and established a satisfactory home for the child. Here, defendant can give no real home at all. At the time of this appeal, she and Mr. Miller were not married nor was there any degree of certainty that they would be married or, if so, that a stable home would be provided for the child.

We think this case is controlled by Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417, and Dacey v. Dacey, 179 Minn. 520, 229 N. W. 868, as well as other decisions which have considered the same problem.[1] In determining who shall have custody and care of a minor child, the welfare of the child is the chief consideration. This consideration is superior to the desires of either parent.

It seems to us that by its order in this case, the trial court properly took into consideration all of the circumstances and arrived at a conclusion best calculated to secure for the child its proper care and attention. In

[1]Christianson v. Christianson, 217 Minn. 561, 15 N. W. (2d) 24; Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69; 6 Dunnell, Dig. (3 ed.) § 2800; 24 Am. Jur. (2d) Divorce and Separation, § 783.

reviewing the trial court's determination, we are required to keep in mind that it had an opportunity to hear and see the parties on the witness stand and to observe and appraise the sincerity of their attitude and purpose. We have said many times that the trial court is vested with broad discretion and, in the absence of a showing of arbitrary action in the award of custody, an appellate court will not interfere with the exercise of that discretion. Aske v. Aske, *supra*; Dacey v. Dacey, *supra*.

We cannot say from the record here that the trial court abused its discretion in failing to remove the child from a home where she is receiving excellent care and attention and place her in the custody of the mother whose present situation is unstable and whose future plans and prospects are uncertain.

Affirmed.