## DIANE·L. REILAND v. ROBERT KENNETH REILAND.

160 N. W. (2d) 30.

June 21, 1968—No. 40,752.

*George O. Murray,* for appellant.
*Paul B. Cross* and *Daniel T. Cody,* for respondent.

Heard· before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from orders denying motions for a new trial by plaintiff wife, Diane L. Reiland, in a divorce action against her husband, Robert Kenneth Reiland. The trial court ordered judgment granting a divorce to defendant husband and awarding him permanent custody and control of the two minor children of the parties, a boy now 4 years of age and a girl, now 7. The court also awarded defendant all of the personal property of the parties. Plaintiff contends that the court abused its discretion in awarding permanent custody of the children to the father and that the evidence does not support the finding that the mother is not a fit person to have custody of the children.

The Reilands were married in 1960 when they were teen-agers and while the husband was employed as a technician in the IBM plant in Rochester, Minnesota. Shortly after their marriage, they moved to Poughkeepsie, New York, where the husband engaged in a training program for his employer. Thereafter, they returned to Minnesota and made their home in Spring Valley, a small town near Rochester. The husband continued working for IBM at Rochester.

It would appear from the record that the difficulties which led to their divorce began early in marriage. While they were in New York, the wife had difficulty in adjusting to the absence from her parents. She pressed her husband to provide her with expenses for a return trip to visit her parents. Because of the expense involved, he refused. The difficulties increased after they returned to Minnesota. These difficulties were aggravated by money problems and conflicts with relatives. The wife complained that she never had enough money for her needs and that her husband neglected the children, spending too much time with his relatives, particularly on hunting trips with his brother, Norbert. The husband contends that he made ample provision for his wife, giving her a sufficient allowance for personal use and household expenses. Although they had approximately $1,800 saved when they returned from New York to Minnesota, these savings had been dissipated at the time of the trial. Apparently, the money went to purchase furniture, a car, a pickup truck, and a thoroughbred horse which the husband owned for a short time. He admits hunting often with his brother but says he has never been away

from home for more than a few hours at a time. It is not disputed that the wife is a highly volatile young lady, has a quick temper, and is given to the use of coarse language. When her husband bought the thoroughbred horse, she tore up the papers in a fit of anger, and on one occasion left for a visit at the home of her parents in a neighboring Iowa town, leaving the children alone with a sharp message of instructions for her husband. At one time they both visited a psychiatrist with a view to working out their marital difficulties, but this project came to nothing. During the period of their marriage, the wife took outside employment to provide additional income for the family.

The record would indicate that the mother has taken good care of the two minor children. The pastor of her church, who had visited the home on a number of occasions, testified that she kept the house "in good order." The children, he said, "are kept well-dressed and clean," and the older child attends Sunday school. Other witnesses, who were acquainted with the family, testified that the children were well cared for, well nourished, the home was orderly, and that the mother provided religious instruction for the children both at home and when they visited her parents. In her motion for a new trial which was denied, plaintiff-wife sought to submit newly discovered evidence based upon affidavits of a number of witnesses, including neighbors, a county health nurse, and the kindergarten teacher of the minor daughter. According to the affidavits, these witnesses had an opportunity to observe plaintiff's conduct and treatment of the children and were prepared to give evidence bearing upon her fitness to have custody.

The action of the trial court in awarding permanent custody to the husband is explained by the finding that "plaintiff has conducted a course of continuous bickering and faultfinding and other acts of a malicious nature subversive to the relationship of husband and wife and that plaintiff has committed adultery with a man by the name of James Merritt, and that said adultery was committed without the consent, connivance, privity or procurement." This finding is predicated upon evidence that plaintiff was involved in a sex incident in November 1961 when Merritt, her brother-in-law, was in her apartment after he had been drinking and attempted sexual intercourse. Whether it was an attempt

or a consensual act is in dispute. It is not disputed, however, that on the day following the incident, which occurred in late November 1961, the wife told the husband about it, and the next day there was a family conference attended by the parties, Merritt and his wife (plaintiff's sister), plaintiff's parents and defendant's brother. It was determined that no action be taken against Merritt. The parties went on living together for some years thereafter, during which the second child was born on March 18, 1964. This incident was aired at the trial about 5 years after it had occurred.

■ In considering the wife's asserted errors, the provision of Minn. St. 518.17 which directs that in a divorce determination custody of the minor children of the parties should be made with "due regard to the age and sex of such children" should be noted. In Johnson v. Johnson, 223 Minn. 420, 427, 27 N. W. (2d) 289, 293, we said:

"* * * Almost without exception we have held that under the foregoing statute the custody of very young children should be awarded to the mother."

While it is recognized that the trial court's determination in custody matters will not be reversed unless there has been a clear abuse of that discretion, 6 Dunnell, Dig. (3 ed.) § 2800g, it is necessary to keep in mind the well-recognized policy of courts in divorce matters that children of tender years are best left with the mother if the mother is fit and able to give the necessary care. Currier v. Currier, 271 Minn. 369, 136 N. W. (2d) 55; McDermott v. McDermott, 192 Minn. 32, 255 N. W. 247; Volkman v. Volkman, 151 Minn. 78, 185 N. W. 964. Plaintiff has given the children good care, and experience has conclusively demonstrated the wisdom of permitting a child to be brought up under the influence of the mother. We said in Newman v. Newman, 179 Minn. 184, 186, 228 N. W. 759, 760, that custody of young children may be awarded to the mother "even in some instances where it has been proved that she was not morally upon a very high plane, on the broad ground that the welfare of the child is the paramount consideration."

■ Although it has been said that it is usual to award custody of children to the innocent spouse, courts do not always confine themselves to such practice. "Even though a father obtains the divorce, the preference

of the mother as a custodian of the children of tender years persists where her fault does not reflect upon her present fitness to raise a child." 24 Am. Jur. (2d) Divorce and Separation, § 788. The welfare of the child may best be served by awarding custody to the mother notwithstanding evidence of misconduct. The fact that the mother has been indiscreet or unfaithful does not necessarily disqualify her as custodian of the children. The moral unfitness of the mother must be such as to have a direct bearing on the welfare of the child if she is to be deprived of the custody. Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881; Wendland v. Wendland, 29 Wis. (2d) 145, 138 N. W. (2d) 185; Stearns v. Stearns, 80 S. D. 443, 126 N. W. (2d) 124; Meinhardt v. Meinhardt, 261 Minn. 272, 111 N. W. (2d) 782; Gumphrey v. Gumphrey, 262 Minn. 515, 115 N. W. (2d) 353.

■ In applying the law expressed by this court in our many previous decisions, we are constrained to the view that the action of the trial court in depriving the mother of the permanent custody of the children, without specific provisions for her right of visitation, and in further depriving her of all interest in the personal property of the parties accumulated during the marriage, is not warranted by the evidence. While it is true that plaintiff-wife has an unfortunate hostility toward her husband, we are not satisfied on the basis of the record that that circumstance would warrant the traumatic disposition imposed by the court. Nor do we feel that the equivocal evidence bearing on the Merritt incident warrants the grievous loss which it inflicts upon plaintiff. While it is true that the evidence reflects that plaintiff was indiscreet, it seems to us that the price the court would have her pay for it is not commensurate with any demonstrated unfitness. It is often said that one may be a bad wife and still be a good mother. Wendland v. Wendland, *supra;* 24 Am. Jur. (2d) Divorce and Separation, § 788.

We accordingly conclude that a new trial should be granted so that the merits of the wife's cause may be more fully considered. We further hold that upon proper application by plaintiff the trial court should return the custody of the children to her with proper provision for their support pending a final determination of this matter.

Reversed and new trial granted.