## MALCOLM H. HANSEN v. PATRICIA J. HANSEN.

169 N. W. (2d) 12.

June 13, 1969—No. 41350.

*Clinton W. Wyant,* for appellant.
*John P. Weber,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from a judgment of the district court entered in a divorce proceeding wherein Malcolm M. Hansen sought a divorce from his wife, Patricia J. Hansen. The judgment stated:

"That the marriage relation between the Plaintiff and De-

fendant is dissolved and the Plaintiff is awarded an absolute divorce from the Defendant.

"The Defendant is awarded the care and custody of the minor children of said marriage, to-wit: Gregory John Hansen, age 3 years, and Karl Michael Hansen, age 2 years, subject to the following specific terms and conditions:

"The Defendant shall in the future conduct herself as a law abiding person.

"She shall not associate with the said Fred Bennett in the presence or knowledge of said children.

"The Defendant shall place said children in the home of her parents, Elmer and Irene Smith, at their Aitkin home and at their Clear Lake summer residence and keep them in that home under the care and supervision of said Elmer and Irene Smith unless and until permitted to maintain them elsewhere by a written order of the court.

"She shall facilitate a right of visitation by Plaintiff with said children at points of his choice in the State of Minnesota on the 2nd and 4th weekends of each month from 5 P. M. on Friday until 5 P. M. on Sunday of such weekend, and for a two week period each summer of his choosing, provided he gives two weeks notice in writing of when he has chosen such summer period.

"That such children shall not be taken by her outside the territorial limits of the State of Minnesota.

"Said children are not to be left unattended by some competent and mature baby sitter if Defendant and her parents are temporarily away from them.

"That both the Plaintiff and the Defendant and all persons acting for them are restrained and enjoined from taking said minor children of the parties outside the territorial limits of the State of Minnesota.

"That Plaintiff is ordered to pay the sum of $150.00 per month beginning January 1, 1968, to said Elmer Smith for the care and

support of said minor children of the parties while they are in his home under such Judgment.

\* \* \* \* \*

"That Defendant is not entitled to any alimony."

Plaintiff-appellant contends the trial court abused its discretion in arriving at the above judgment and proposes an award of custody to himself, subject to the placement of the children in the home of his brother, Lewis Hansen, with reasonable visitation privileges extended to both plaintiff and defendant.

Plaintiff and defendant were married in Aitkin, Minnesota, November 4, 1961, plaintiff at that time being 22 years of age and defendant, 21. Following their marriage, they first resided in Ramsey County while plaintiff attended the University of Minnesota, defendant being then employed as a secretary for Briggs Transportation Company. It appears that the difficulties which resulted in this divorce commenced shortly after they moved to Ramsey County. The record indicates that plaintiff began drinking to excess; kept company with other women; and physically assaulted defendant and humiliated her in public.

Plaintiff later left school and started work as an electrician. His work as such was performed mostly out of town, and he returned home only on weekends. A couple of years later, he quit his job and they moved to Aitkin. Plaintiff again worked as an electrician, and they lived in a winterized cabin, which was inadequately heated and difficult to reach by car during the winter and spring seasons. Defendant complained about the living conditions but to no avail. In 1965 plaintiff quit his job as an electrician and began work for the Public Utilities Commission in Grand Rapids, Minnesota. They moved into a house in that town, but within a short time plaintiff quit that job and began work for the Bechtal Corporation at Cloquet, Minnesota. By this time their marriage was plagued with quarrels and as a result defendant took the children and went to stay with her parents in Aitkin. Plaintiff, however, removed the children in de-

fendant's absence and returned with them to Grand Rapids. Defendant subsequently also returned to Grand Rapids.

It appears that thereafter violent arguments arose periodically, defendant at that time admitting to having committed adultery. She claims to have been driven to this by reason of plaintiff's cruel treatment. Plaintiff, upon discovering that such relationship had come into being, reacted violently with physical abuse and threats, both against defendant and the man with whom she is alleged to have carried on illicit relations. The parties met with the man in question, who claimed he loved defendant and wished to marry her.

At the trial, however, defendant testified that she had no present intention of continuing the alleged illicit relationship and that she had no plans for remarriage if the parties should become divorced. The judgment entered forbade defendant from associating with this other man "in the presence or knowledge of [the] children."

There was an admission during the trial that defendant had given birth to an illegitimate child prior to her marriage and that she had given that child away for adoption. There was a dispute as to whether or not defendant had informed plaintiff of this fact prior to their marriage. There were other alleged commissions of adultery on the part of defendant, but there is nothing in the record to indicate that the testimony to that effect was worthy of more credence than it received from the trial court.

Plaintiff complained that defendant and a girl friend met one Boyd Mangseth and Don Storrs at a cabin on Pokegama Lake pursuant to an arrangement consummated in a bar. Defendant denied any such prearranged meeting. The trial court found the incident to be flirtatious in nature and a mere indiscretion on the part of defendant. There was no evidence of anything more than the meeting.

Plaintiff also complained that defendant was guilty of permitting diaper rash and abnormal bottle feedings while caring for their children. There was conflicting testimony on all these issues

and upon all the evidence the trial court found both plaintiff and defendant to be fit and proper persons to have care and custody of the minor children.

Plaintiff's plans for custody were to place the children in the care of his brother, Lewis Hansen. His brother testified that he would welcome the children and treat them as his own, with the ultimate possibility of adoption. The trial court apparently recognized Lewis Hansen as a good man who would provide a good home. However, the trial court found defendant's plan, which called for her and the children to live with her parents, to be in the best interests of the children.

The basic contention by plaintiff on this appeal is that the best interests of the children do not lie in awarding custody to defendant because of her admitted infidelity and her having failed to give the children proper care and attention.

The trial court in a divorce action is vested with broad discretion in custody matters and, in the absence of a showing of arbitrary action, an appellate court will be slow to interfere with the exercise of that discretion. Schultz v. Schultz, 266 Minn. 205, 123 N. W. (2d) 118; Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881; Molto v. Molto, 242 Minn. 112, 64 N. W. (2d) 154. A showing of arbitrary action is nonexistent under the present record. In case of review, however, this court is bound to adopt the state of facts most favorable to respondent. 6 Dunnell, Dig. (3 ed.) § 2800.

The general rule as stated by this court on numerous occasions is that custody of young children should be awarded to the mother unless doing so would be detrimental to their welfare. Lindberg v. Lindberg, 282 Minn. 536, 163 N. W. (2d) 870; Eisel v. Eisel, *supra*; Reiland v. Reiland, 280 Minn. 444, 160 N. W. (2d) 30; Meinhardt v. Meinhardt, 261 Minn. 272, 111 N. W. (2d) 782.

The trial court specifically found defendant to be a fit person for care and custody of the children, although such a finding is not required. Lindberg v. Lindberg, *supra*.

While there was somewhat conflicting testimony, particularly

with regard to the diaper rash and cleanliness of the children, it nevertheless appears that defendant has given the children good care. Experience has shown the wisdom of permitting a child to be raised under the mother's influence when the situation permits. Adultery is not itself enough to establish the unfitness of a mother. As indicated in Reiland v. Reiland, *supra,* one may be a bad wife but still be a good mother. Thus, the moral unfitness of the mother must be such as to have a direct bearing on the welfare of the child if she is to be deprived of custody. Eisel v. Eisel, *supra;* Wendland v. Wendland, 29 Wis. (2d) 145, 138 N. W. (2d) 185; Stearns v. Stearns, 80 S. D. 443, 126 N. W. (2d) 124; Meinhardt v. Meinhardt, *supra;* Gumphrey v. Gumphrey, 262 Minn. 515, 115 N. W. (2d) 353. Such an effect has not been established in the instant case.

However immutable the foregoing rules may be in general, they are in each case overridden by the rule that the welfare of the child is the paramount consideration of the court.

In Reiland v. Reiland, *supra,* this court dealt with a similar situation involving sexual misconduct by the wife. This court there quoted from Newman v. Newman, 179 Minn. 184, 186, 228 N. W. 759, 760, to the effect that the mother may be a fit person and therefore given custody, although "she was not morally upon a very high plane."

So far as our cases are concerned, none in which a father was given custody has dealt with a fact situation involving sexual misconduct by the mother without additional circumstances upon which the award of custody could have been based. In Bennett v. Bennett, 277 Minn. 227, 152 N. W. (2d) 187, where the wife, a minor, began keeping company with another man while the husband was in the service, the award of custody to the father was supported by findings of the mother's limited financial means, inability to hold a job, and generally immature personality. In Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417, the only case cited and relied upon by plaintiff herein, in addition to a finding of multiple sexual relationships by the wife, special

emphasis was given to the fact that the mother, in seeking a review of the custody decree, did so 6 1/2 years after the original award was made to the father and that to alter custody at that late date was not in the best interests of the child. In Wendland v. Wendland, *supra,* where the mother had separated her indiscretions from the raising of the children and had performed the latter conscientiously and well, the Wisconsin court held she was a fit person to retain custody of the children and the general rule in favor of the mother prevailed. This case was cited with approval in Reiland v. Reiland, *supra.*

Other Minnesota cases awarding custody to the father have been based on a rebuttal of the presumption that it is in the child's best interest to remain with the mother. Thus, in Fish v. Fish, 280 Minn. 316, 159 N. W. (2d) 271, this court held a close father-son relationship would support an award of custody of the son to the father. There, a similar relationship between mother and son was absent.

There being no abuse of discretion in the award of custody to defendant, the judgment herein must be affirmed. Plaintiff, however, is not foreclosed from reopening that portion of the decree having to do with custody of the children during their minority if later developments and circumstances should warrant such action on his part.

Affirmed.