**In re the Marriage of Charles Kenneth LEYH, Petitioner, Appellant,**

v.

**Connie Jo Leyh STELZER, Respondent.**

**No. C5-86-430.**

Court of Appeals of Minnesota.

Dec. 30, 1986.

Lance R. Heisler, Staples, for appellant.

Jeffrey D. Pederson, Wadena, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

### OPINION

NIERENGARTEN, Judge.

At the time of their marriage dissolution, the parties stipulated to joint legal custody and appellant Charles Leyh as primary custodial parent. A year later, the trial court granted respondent Connie Leyh Stelzer's motion to be named primary custodial parent and gave Charles liberal visitation. Charles' motion to amend was denied and he appeals. We reverse and remand.

### FACTS

Charles Leyh and Connie Leyh Stelzer were married in 1981 and separated in October of 1983. The parties agreed to each having custody of their child, Jill, born August 9, 1981, for three and one-half days per week.

Proceeding to divorce, the parties entered into a stipulation for child custody which was incorporated into the order for judgment and provided:

2. That both the petitioner and respondent are awarded the joint legal custody of the minor child * * * and further the petitioner [Charles Leyh] shall be the primary custodial parent and both parties shall cooperate regarding visitation and in any and all matters that might affect the minor child.

Connie, not represented by counsel, now maintains that she did not understand the implications of having Charles designated

as "primary custodial parent." Both Charles and his attorney testified that they encouraged Connie to retain counsel and that Connie indicated she understood and was willing to accept their explanation of the effect of that designation.

From October 1983, when the parties separated, until May 1, 1984, Jill remained with each parent for three and one-half days per week. On May 1, 1984, a few days before Connie's remarriage, Charles proposed that Jill spend one week out of four with Connie and the remaining three weeks with Charles, during which time Connie could have Jill from Wednesday night to Thursday night, and other days if prior arrangements were made, and provided she did not take Jill away from Bertha where Charles lived.

Connie agreed that longer time periods with each parent would benefit Jill and responded with several plans to which Charles was not amenable. As primary custodian, Charles felt it was his responsibility to break the deadlock and his proposed three week/one week plan was implemented.

Charles is employed full-time and while at work, Jill is in the care of Charles' sister. Neither parent has reservations about his sister's ability to take good care of Jill. Connie is unemployed at this time and intends to so remain or work part-time, thereby minimizing Jill's day care.

Connie moved for modification of the original dissolution decree including visitation rights. The parties agreed to a mediation proposal which provided for visitation rights and divided holiday visits. Charles never signed the agreement and later indicated he found it unacceptable and was returning to the three week/one week plan. Connie then moved again for modification of the divorce decree, asking that she be named primary custodial parent and setting of visitation rights for the non-custodial parent.

The trial court found that at the time of the dissolution the court did not know that Charles' work schedule required Jill to spend time with a sitter or that Connie was unemployed. The trial court found that Connie had remarried and had the financial freedom to remain at home and care for Jill. In addition the trial court found that Charles minimized Connie's visitation in order to promote stability and that Connie was more willing to make concessions that would strengthen each parent's relationship to Jill. Most significantly the court determined that the present arrangement endangered the child's emotional development and that little harm would result from a change. The trial court emphasized that a change would minimize the time Jill spent with a sitter.

The trial court named Connie as primary custodial parent. When Jill started school, Charles would have Jill every other weekend plus one evening per week from 4:00 p.m. to 8:00 a.m. Holidays were divided and Charles was to have Jill for two weeks in the summer.

Charles' motion for amended findings of fact, conclusion of law and order for judgment was denied except for an amended finding that *both* parents are fit and proper persons to have care, custody and control of their child. Charles now appeals.

## ISSUE

Have the statutory requirements of Minn.Stat. § 518.18 been met so that modification of custody was not in error?

## ANALYSIS

In reviewing custody determinations, this court's review is limited to determining whether the trial court abused its discretion by making findings unsupported by the law, or by applying the law improperly. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings will be sustained unless clearly erroneous. *Id.* In reviewing the evidence this court must examine it in the light most favorable to the trial court's findings. *Hansen v. Hansen,* 284 Minn. 1, 5, 169 N.W.2d 12, 15 (1969).

■ Modification of custody orders is governed by Minn.Stat. § 518.18 which provides:

[T]he court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the custodian and that the modification is necessary to serve the best interests of the child.

Minn.Stat. § 518.18(d) (1984) (as amended by 1986 Minn. Laws ch. 444). When the court applies this standard it must retain the custodian established by the prior order unless:

[t]he child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii) (1984) (as amended by 1986 Minn. Laws ch. 444).

Under this provision the trial court must find (1) a significant change in the circumstances of the child or custodian since the prior order, (2) modification is in the child's best interest, (3) the child's present environment endanger's the child's health or emotional development, and (4) the harm likely to be caused by a change is outweighed by the advantages of a change. *Gustafson v. Gustafson*, 376 N.W.2d 290, 292 (Minn.Ct.App.1985); *State ex rel. Gunderson v. Preuss*, 336 N.W.2d 546, 548 (Minn.1983). The trial court must find all four elements. *Gustafson*, 376 N.W.2d at 292.

### 1. Change in Circumstances.

■ The trial court found a change in circumstances from the fact that the mother is unemployed, remarried and financially able to remain at home and care for Jill so that Jill would not have to go to a sitter. The trial court found that the court did not know that Connie was unemployed at the time of the divorce and was not aware that Charles worked and Jill was cared for by a babysitter. However, the transcript of the stipulation proceeding shows that the court was informed that Connie was unemployed and that Charles worked full-time. It is obvious that if Charles worked full-time, his pre-school child would have to be in someone's care. The parties' employment situation was thus known to the court. The statute requires that the substantial change be in the circumstances of the custodial parent or the child. Minn.Stat. § 518.18(d) (1984); *Gustafson*, 376 N.W.2d at 292; *Knutson v. Primeau*, 371 N.W.2d 582, 586 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Oct. 11, 1985). Therefore, any reliance by the trial court in changes in Connie's circumstances, such as her remarriage is erroneous.

### 2. Modification is in the Child's Best Interests.

When the court finds that there has been a significant change warranting modification it must then determine if the proposed modification is *necessary* to promote the child's best interests. While the trial court found that it was in the best interests of the child to have a meaningful relationship with both parents, there was no clear evidence that a change in custody was necessary to achieve that goal.

### 3. Does the Present Environment Endanger the Child's Physical or Emotional Health?

Both parties agree that Jill is in no physical danger, regardless of which parent she is with. While Connie argues, and the trial court found, that the present arrangement impairs the child's emotional development, the evidence indicated that Jill is a normal happy child who has a good relationship with both parents. Connie also feels that Jill's development is harmed because she spends time with a babysitter. Both parties agree that the sitter (Charles' sister) provides excellent care and that Jill is quite happy in her home. The testimony of the social workers indicated that in their opinion, it generally is in the best interest of

the child to be cared for by a parent rather than a substitute caregiver. There was no evidence, however, to show that in this particular case Jill suffered any harm as a result of time spent with a sitter rather than a parent.

4. Will the Advantages of a Change Outweigh the Harm Caused by a Change in the Environment?

In this case, it is unlikely that the change in custodial parent would result in any harm to the child. Jill is accustomed to spending time with both parents. The question is whether a change in custody will be advantageous. The main advantage presented by Connie is the fact that Jill might spend less time with a day care provider. There is insufficient evidence in this case to determine whether this would be advantageous to Jill. By all accounts, Jill is quite happy with her day care provider and enjoys the companionship of her cousins.

### DECISION

Because there has been no significant change in the circumstance of the custodial parent or the child, and because the other requirements of Minn.Stat. § 518.18 have not been met, the trial court must be reversed and custody should remain with appellant father. The trial court was correct in its determination that court ordered visitation rights were necessary. We remand for a determination of visiting rights consistent with the appellant as primary custodian. Legal custody remains joint.

Reversed and remanded.